Jovan STEWART, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 4904–0608–CR–465.

Court of Appeals of Indiana.

May 25, 2007.

Elizabeth Gamboa, Franklin, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy At-

torney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Jovan Stewart appeals his convictions and six-year sentence for one count of Class C felony attempted battery, one count of Class D felony criminal recklessness, one count of Class A misdemeanor possession of a handgun without a license, and one count of Class A misdemeanor dangerous possession of a firearm by a child. We affirm in part, reverse in part, and remand.

### Issues

The issues before us are:

I. whether there is sufficient evidence to support Stewart's convictions;

II. whether double jeopardy concerns preclude him from being convicted of both attempted battery and criminal recklessness; and

III. whether his sentence is appropriate.

### Facts

On September 21, 2005, Annie Dancy drove her niece, Claudette Sanders–Brown, to her apartment in the Colonial Square complex in Indianapolis so she could pick up some items and spend the night with Dancy. Accompanying Dancy and Sanders–Brown were Dancy's two daughters, Bianca and Briana, her infant granddaughter, and her ex-husband, Michael Wilson, Sr. Dancy's son, Michael Wilson, Jr., was accused of having recently murdered Demetrius Nance, who had several friends who either lived or gathered at the Colonial Square apartment complex. When Dancy arrived at the complex, several people were congregated outside on the steps of Sanders–Brown's apartment and the one next door.

Bianca, Briana, and Sanders–Brown collected some items from Sanders–Brown's apartment and put them in the car. Bianca and Briana got back into the car, and Bianca told Dancy to start the car because she was feeling nervous about being at the complex. Sanders–Brown had to return to her apartment for one more thing, however. Before she did so, Javon Cushenberry walked in front of Dancy's vehicle and after doing so said, "you better ride the f* * * out right now." Tr. p. 70. Soon thereafter, Cushenberry drew a handgun and fired a shot at Dancy's vehicle. Sanders–Brown then ran or crawled up the steps to her apartment while Dancy attempted to drive away quickly. While running or crawling up the steps, Sanders–Brown saw two other individuals to her left firing shots at Dancy's vehicle as it fled the apartment complex. She identified these men as Stewart and Michael Rutherford. Dancy's vehicle was struck by at least three bullets. One shot shattered the rear passenger window, cutting Briana. Another shot lodged in the back of the passenger seat directly behind the infant's car seat. A third penetrated the vehicle above the right rear tire. There is conflicting evidence as to how many shots in total were fired at the vehicle.

The State charged Stewart, along with Cushenberry and Rutherford, with one count of Class A felony attempted murder, two counts of Class D felony criminal recklessness, and one count of Class D felony intimidation. Stewart also was charged with Class A misdemeanor possession of a handgun without a license and Class A misdemeanor dangerous possession of a firearm by a child. The trial court conducted a bench trial on July 11, 2006. At the conclusion of the State's evidence, the trial court granted judgment on the evi-

dence with respect to the intimidation charge and one of the criminal recklessness charges. The trial court also ruled that the defendants could not be convicted of attempted murder, but that it would proceed on that charge of the information as a lesser-included offense of Class C felony attempted battery.

After the defense rested, the trial court found Stewart guilty of Class C felony attempted battery, Class D felony criminal recklessness, Class A misdemeanor possession of a handgun without a license, and Class A misdemeanor dangerous possession of a firearm by a child. It also entered judgments of conviction for all counts. It sentenced Stewart to six years for the attempted battery conviction, with three years suspended and three years of probation; it also sentenced him to 547 days for the criminal recklessness conviction and one year for each handgun conviction, all to be served concurrently to the six-year Class C felony sentence. Stewart now appeals.[1]

## Analysis

### I. Sufficiency of the Evidence

■ Stewart first challenges the sufficiency of the evidence supporting all of his convictions, claiming there is insufficient evidence that he even possessed a firearm at the time in question, let alone fired one. When reviewing the sufficiency of evidence supporting a conviction, we will not re-weigh the evidence or judge the credibility of witnesses. *Staton v. State,* 853 N.E.2d 470, 474 (Ind.2006). We must look to the evidence most favorable to the conviction together with all reasonable inferences to be drawn from that evidence. *Id.* We will affirm a conviction if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.*

■ Stewart specifically claims that the testimony of Briana and Sanders–Brown, who both identified him as a shooter, was unreliable. A single eyewitness's testimony is sufficient to sustain a conviction. *Badelle v. State,* 754 N.E.2d 510, 543 (Ind.Ct.App.2001), *trans. denied.* Any inconsistencies in identification testimony go only to the weight of that testimony, as it is the task of the fact-finder to weigh the evidence and determine the credibility of the witnesses. *Id.* We do not weigh the evidence or resolve questions of credibility when determining whether the identification evidence is sufficient to sustain a conviction. *Id.*

■ Briana knew Stewart from high school. It is true she was not an ideal witness for the State because in her testimony she initially stated that she could not remember what she saw at the time of the incident. However, upon further examination and being reminded that she had picked Stewart out of a police photo lineup, she did testify unequivocally that she saw Stewart shooting a gun. Stewart does not contend that the lineup was unduly suggestive or performed improperly. Furthermore, any weaknesses or inconsistencies in Briana's identification of Stewart as a shooter were for the fact-finder to weigh and consider.

Sanders–Brown also picked Stewart out of a police photo lineup; again, Stewart does not complain about the propriety of the lineup. She re-identified Stewart in court as one of the shooters and related that she had no doubt that he was shooting

---

1. We also decide Rutherford's appeal today. Cushenberry's appeal arising from this case is still pending.

a gun that night. As with Briana, the trial court as fact-finder had the exclusive responsibility to decide whether to believe Sanders–Brown's identification testimony, after observing her first-hand and considering reasons to believe or not believe her. We will not interfere with the trial court's decision to believe her. There is sufficient evidence to support Stewart's convictions for attempted battery, criminal recklessness, and possession of a handgun without a license.

■ Stewart also makes a specific challenge to the sufficiency of the evidence supporting his conviction for dangerous possession of a firearm by a child, as Indiana Code Section 35–47–10–5 defines that crime. For purposes of this statute, a "child" is a person who is less than eighteen years of age. Ind.Code § 35–47–10–3. Stewart contends the State failed to prove he was under eighteen on September 21, 2005, as required to sustain his conviction under Section 35–47–10–5. Where the General Assembly has chosen to include the age of the defendant as an element of a crime, the Due Process Clause of the Fourteenth Amendment requires the State to prove the defendant's age beyond a reasonable doubt. *See Staton,* 853 N.E.2d at 473.

The only possible evidence regarding Stewart's age that the State presented was the testimony of Briana, who stated at trial on July 11, 2006, that she was seventeen years old and that at one point she had had one class with Stewart in high school. Briana did not state that she was in the same *grade* as Stewart, nor did she state what grade she thought Stewart was in or how old he might be. It is common knowledge that many high school students, seniors in particular, may be eighteen years old and that different grade level students may still take certain classes together. It also appears from Briana's testimony that Stewart was no longer attending school because she spoke in the past tense, saying, "he *went* to school with me." Tr. p. 137 (emphasis added).

This case is vastly different from *Staton,* where our supreme court held there was sufficient evidence the defendant was over eighteen years old so as to support his conviction for sexual misconduct with a minor. There, the victim, who was fifteen at the time of the crime, said she "imagined" and "understood" that the defendant was at least eighteen or at least four years older than she was at the time, and that he had graduated from high school at least one year before her eighteen-year-old sister. *Staton,* 853 N.E.2d at 474. While noting that it should have been easy for the State to present clearer documentary evidence of Staton's age, the court nevertheless held that the victim's testimony provided sufficient circumstantial evidence that he was over eighteen at the time he had sex with the victim. *Id.* at 475.

We cannot reach the same conclusion here. To conclude that Stewart was under eighteen on September 21, 2005, based on the evidence presented at trial, would require reliance on too many unsupported inferences arising from a sliver of evidence presented by Briana. Unlike in *Staton,* no witness even ventured a guess as to Stewart's age. We reverse, because of insufficient evidence, his conviction for dangerous possession of a firearm by a child.

### II. Double Jeopardy

■ Next, Stewart contends that his convictions for both attempted battery and criminal recklessness violate the Indiana Constitution's Double Jeopardy Clause. That Clause, found in Article 1, Section 14 of the Indiana Constitution, "was intended to prevent the State from being able to proceed against a person twice for the same criminal transgression." *Richardson v. State,* 717 N.E.2d 32, 49 (Ind.1999).

Two or more offenses are the "same offense" in violation of the Indiana Double Jeopardy Clause, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. *Id.* Under the "actual evidence" test, the evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts. *Id.* at 53. To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish all of the essential elements of a second challenged offense. *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002). To determine what facts were used, we consider the evidence, charging information, final jury instructions (if there was a jury), and arguments of counsel. *Goldsberry v. State*, 821 N.E.2d 447, 459 (Ind.Ct.App.2005).

To convict Stewart of Class C felony attempted battery with a deadly weapon, the State was required to prove that he (1) engaged in the commission of a substantial step toward (2) knowingly or intentionally (3) touching another person (4) in a rude, insolent or angry manner (5) by means of a deadly weapon. *See Matthews v. State*, 476 N.E.2d 847, 849 (Ind. 1985) (citing I.C. §§ 35–42–2–1 and 35–41–5–1). The requisite culpability for attempted battery with a deadly weapon exists if the defendant's conscious objective is to shoot another person, or where the defendant is at least aware of a high probability that, by his or her conduct of shooting, one of the bullets would strike another person. *Id.* at 849–50. By comparison, to convict Stewart of Class D felony criminal recklessness as charged here, the State was required to prove that he recklessly, knowingly, or intentionally performed an act that created a substantial risk of bodily injury to another person while armed with a deadly weapon. I.C. § 35–42–2–2(b)(1) and (c)(2)(A). Although the elements of these offenses are not identical, there clearly is substantial overlap between them.

This overlap is continued in the wording of the charging information the State filed. The original attempted murder charge against Stewart alleged that he knowingly shot a deadly weapon into a vehicle occupied by Dancy, her granddaughter, Michael Wilson, Sr., Briana, and Bianca, with intent to kill them. The criminal recklessness charge alleged that Stewart while armed with a deadly weapon recklessly performed an act that created a substantial risk of bodily injury to Dancy, her granddaughter, Michael Wilson, Sr., Briana, and Bianca, and specified that the act was firing into the occupied vehicle. Clearly, Stewart's act of firing at Dancy's vehicle was what the State intended to rely on to support both the attempted murder/battery charge and the criminal recklessness charge.

On appeal, the State posits that there was separate evidence supporting the two charges: namely, that the attempted battery occurred when Dancy was backing out of a parking space and Stewart shot at the vehicle, and the criminal recklessness occurred when Dancy was driving away and Stewart allegedly was still shooting at the vehicle. During opening and closing arguments at trial, however, the State made no such hairsplitting attempt to differentiate evidence supporting the attempted murder/battery charge from evidence supporting the criminal recklessness charge. In addition, the record is unclear as to wheth-

er Stewart fired one or more than one shot towards Dancy's vehicle. The testimony of Briana and Sanders–Brown was not specific as to the number of shots they saw Stewart fire. Given the language of the charging information, the evidence presented at trial, and the arguments of counsel at trial, we have little hesitation in concluding that there is a reasonable possibility the trial court utilized the same evidence to establish all of the elements of both attempted battery and criminal recklessness and to convict Stewart of both crimes, in violation of the Indiana Double Jeopardy Clause.

The trial court here entered judgments of conviction for both attempted battery and criminal recklessness and sentenced Stewart on both counts. It did not simply "merge" the guilty findings for both counts without entering a judgment on the criminal recklessness count. Thus, it is necessary to remand with directions to vacate Stewart's judgment of conviction for Class D felony criminal recklessness in order to remedy this double jeopardy violation. *Cf. Green v. State,* 856 N.E.2d 703, 704 (Ind. 2006) ("a merged offense for which a defendant is found guilty, *but on which there is neither a judgment nor a sentence,* is 'unproblematic' as far as double jeopardy is concerned.") (emphasis added).

### III. Sentence

Stewart's final claim is that his six-year sentence is inappropriate. This sentence is two years more than the advisory sentence for a Class C felony. *See* I.C. § 35–50–2–6(a).[2] Under Indiana Appellate Rule 7(B), this court may revise a sentence that we conclude is inappropriate in light of the

nature of the offense and the character of the offender, after giving due consideration to the trial court's decision.

■■■ At the outset, we urge the State to discontinue citing earlier cases from this court stating that our review of sentences under Rule 7(B) is "very deferential" to the trial court and that we exercise our authority to revise sentences "with great restraint." *See, e.g., Martin v. State,* 784 N.E.2d 997, 1013 (Ind.Ct.App.2003); *Foster v. State,* 795 N.E.2d 1078, 1092 (Ind.Ct. App.2003), *trans. denied.* In our view, the Indiana Supreme Court has set a different course for us to follow when reviewing sentences, one that does not involve *"great restraint"* or being *"very* deferential" to the trial court. *See Hope v. State,* 834 N.E.2d 713, 720 (Ind.Ct.App.2005) (noting that between January 2003 and September 2005, our supreme court issued thirteen opinions analyzing sentences under Rule 7(B) and reduced the sentence in seven of those cases); *see also Neale v. State,* 826 N.E.2d 635, 639 (Ind.2005) (emphasizing that rewording of Rule 7(B) to allow revision of "inappropriate" as opposed to "manifestly unreasonable" sentences "changed its thrust from a prohibition on revising sentences unless certain narrow conditions were met to an authorization to revise sentences when certain broad conditions are satisfied").

■■■ Since we decided *Hope,* our supreme court has continued to reduce sentences under Rule 7(B); by our count it has now decided a total of twenty-two cases under the "inappropriate" standard in place since January 2003 and revised

---

**2.** Stewart committed this crime after the legislature replaced "presumptive" sentences with "advisory" sentences. Stewart's sole argument on appeal is that his sentence is inappropriate, not that the trial court abused its discretion in sentencing him or in identifying and weighing aggravating and mitigating circumstances. We have read and acknowledge the sentencing statement the trial court issued. That statement is important and informs our overall 7(B) review. We always look to a sentencing statement because the aggravators and mitigators discussed assist the comprehensive 7(B) review we undertake.

the sentence in eleven of those cases. We disavow cases such as *Martin* and *Foster* to the extent they suggest excessive deference to the trial court under Rule 7(B), which clearly conflicts with the current, more vigorous approach to revising sentences that a majority of our supreme court has adopted. That said, we must and should exercise deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give "due consideration" to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions. Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind.2006).

Keeping this in mind, we still cannot say that Stewart's six-year sentence is inappropriate. Regarding the nature of this offense, Stewart maintains that his "involvement in this case was questionable." Appellant's Br. p. 16. We have already concluded, however, that there is sufficient evidence that Stewart fired a gun at a vehicle occupied by five persons, including an infant. The existence of multiple victims of a crime is an appropriate justification for increasing the sentence for that crime. *See French v. State*, 839 N.E.2d 196, 197 (Ind.Ct.App.2005), *trans. denied.*

Regarding Stewart's character, it is true he does not have an extensive criminal record. However, he does have a 2004 juvenile delinquency adjudication for bringing a firearm to a school, which would have been a Class D felony if committed by an adult.[3] The significance of a criminal history in assessing a defendant's character and an appropriate sentence varies based on the gravity, nature, and number of prior offenses in relation to the current offense. *See Bryant v. State*, 841 N.E.2d 1154, 1156–57 (Ind.2006). Although this is a single offense, in conjunction with the present offenses it is reflective of an unhealthy attachment to firearms on Stewart's part. Additionally, within a year Stewart escalated from merely possessing a firearm to using one in a potentially deadly manner.

Stewart also asserts, regarding his character, that there was evidence he "was helping to financially support his mother." Appellant's Br. p. 16. We find no such evidence. His mother testified at the sentencing hearing that he did help at home by occasionally babysitting his younger siblings and noted that he works at his grandfather's body shop. However, she did not testify that she relied in any way on Stewart's income. To the extent Stewart's mother will miss his help around the house while he is incarcerated, that is unfortunate but it does not appear to us that incarceration will result in definite hardship to a *dependent* of Stewart, as that mitigating circumstance normally is used. *See Hillenburg v. State*, 777 N.E.2d 99, 109 (Ind.Ct.App.2002), *trans. denied,* (rejecting claimed hardship to dependent mitigator where defendant did not demonstrate degree of elderly mother's reliance on him).

In sum, the nature of this offense, specifically the threatened harm to multiple victims, including an infant, justifies enhancement of Stewart's sentence. As for Stewart's character, we cannot say it is so overwhelmingly positive that it counteracts the aggravating weight of the nature of the offense. As such, Stewart's six-year sentence is not inappropriate.

---

**3.** Stewart argues that he has no criminal history. However, for purposes of sentencing, criminal behavior reflected by a delinquency adjudication is considered part of the defendant's criminal history. *See Ryle v. State*, 842 N.E.2d 320, 321 (Ind.2005), *cert.denied.*

## Conclusion

There is sufficient evidence to support Stewart's convictions for attempted battery, criminal recklessness, and possession of a handgun without a license, but there is insufficient evidence to support his conviction for dangerous possession of a firearm by a child. Additionally, his conviction for criminal recklessness must be vacated because of double jeopardy concerns. His six-year sentence for attempted battery is appropriate. We affirm in part, reverse in part, and remand for the trial court to vacate Stewart's convictions for criminal recklessness and dangerous possession of a firearm by a child.

Affirmed in part, reversed in part, and remanded.

BAILEY, J., and VAIDIK, J., concur.