**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**KIMBERLY A. JACKSON**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

FILED

Mar 14 2012, 9:27 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KARL A. KALER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 57A04-1108-CR-432 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE NOBLE CIRCUIT COURT
The Honorable G. David Laur, Judge
Cause No. 57C01-1003-FC-020

**March 14, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Karl A. Kaler (Kaler), appeals his sentence for theft as a Class D felony, Ind. Code § 35-43-4-2, and his adjudication as an habitual offender, I.C. § 35-50-2-8.

We affirm.

## ISSUE

Kaler raises one issue on appeal, which we restate as follows: Whether the trial court's sentence was appropriate in light of the nature of his offense and his character.

## FACTS AND PROCEDURAL HISTORY

On October 8, 2009, Kaler entered the Rural King supply store in Kendallville, Indiana, along with Nancy Metzger (Metzger). When Kaler exited the store, the store's alarm sounded and a store employee told Kaler that he needed to come back inside. At that point, Kaler began running towards Metzger's minivan. A fellow customer, Duane Davies (Davies), who happened to be a retired police officer, tried to stop Kaler by grabbing his jacket. Kaler swung his arm back in an attempt to break Davies' grip and slipped out of his jacket, causing his glasses and cell phone to fall onto the parking lot.

As Kaler reached Metzger's minivan, Davies attempted again to detain him by grabbing him around the shoulders and head. Kaler struggled with Davies, and another person attempted to detain Kaler from the passenger side of the vehicle. However, Kaler produced a set of car keys and inserted them in the vehicle's ignition. Kaler accelerated rapidly and dragged Davies three or four feet. Eventually, Davies was able to shut off the

vehicle, and Kaler and Davies continued to struggle. Kaler managed to restart the van and dragged Davies fifteen to twenty feet. Fearing for his safety, Davies attempted to back out of the vehicle, but Davies then lost his balance and fell onto the parking lot. A store employee followed Kaler and found store merchandise—a drill, drill batteries, and a brad nailer—on the front lawn of a house along the route that Kaler took.

Shortly after Kaler fled, a Kendallville police officer discovered Metzger and the van at a restaurant in Kendallville, Indiana. Metzger initially denied any involvement in the crime but subsequently admitted to her participation and identified Kaler as the perpetrator. Police officers also discovered two syringes and a spoon with a heavy white residue on it, later identified as oxycodone, in the van.

On March 23, 2010, the State filed an Information charging Kaler with Count I, robbery, a Class C felony, I.C. § 35-42-5-1; Count II, theft, a Class D felony, I.C. § 35-43-4-2; and Count III, possession of a schedule II controlled substance, a Class D felony, I.C. § 35-48-4-6. On May 19, 2011, the State filed an additional Information charging Kaler with being a habitual offender, I.C. § 35-50-2-8. On June 16, 2011, Kaler pled guilty to Count II and to being a habitual offender pursuant to a plea agreement with the State. Under the terms of the agreement, the State agreed to dismiss Kaler's remaining charges and to leave sentencing on Count II to the trial court's discretion. With regards to Kaler's habitual offender charge, the State agreed to an enhanced sentence of a minimum of one and one-half years but no more than four and one-half years.

On July 14, 2011, the trial court held a sentencing hearing and sentenced Kaler to two years for theft, enhanced by four years for being a habitual offender. As aggravating circumstances, the trial court noted Kaler's criminal history and the fact that Kaler was on probation when he committed the instant crime. As mitigating circumstances, the trial court recognized Kaler's guilty plea and that he had begun to change his life while incarcerated.

Kaler now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

Kaler argues that the trial court's sentence was inappropriate in light of the nature of his offense and his character. Under Indiana Appellate Rule 7(B), this court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender. *Childress v. State,* 848 N.E.2d 1073, 1079-80 (Ind. 2006). Although this court is not required to use "great restraint," we nevertheless exercise deference to a trial court's sentencing decision, both because Appellate Rule 7(B) requires that we give "due consideration" to that decision and because we recognize the unique perspective a trial court has when making decisions. *Stewart v. State,* 866 N.E.2d 858, 865-66 (Ind. Ct. App. 2007). The "principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind.

4

2008).  In addition, the defendant bears the burden of persuading this court that his sentence is inappropriate.  *Childress,* 848 N.E.2d at 1080.

First, we recognize that theft as a Class D felony carries a sentence ranging from six months to three years, with an advisory sentence of one and one-half years.  As the trial court sentenced Kaler to two years for theft, his sentence exceeded the advisory sentence by six months.  The maximum enhancement for a habitual offender finding under these circumstances was four and one-half years.  *See* I.C. § 35-50-2-8(h).  Because the trial court enhanced Kaler's sentence by four years for being an habitual offender, his aggregate sentence was one and one-half years short of the maximum statutory penalty.

In regards to the nature of Kaler's offense, he argues that his sentence was harsh in light of the fact that the shop's loss was not great, given the small number of items stolen and the nature of those items, the fact that Kaler did not injure anyone, and the fact that there is no record that Kaler threatened to use force against anyone.  We recognize that although Kaler's aggregate sentence was above the aggregate advisory sentence for the two charges, Kaler was spared potential additional sentences for robbery as a Class C felony and possession of a schedule II controlled substance as a Class D felony because he pled guilty pursuant to a plea agreement.  Furthermore, although Kaler's actions did not cause physical harm, they very well could have.  He admittedly engaged in a physical struggle with Davies while attempting to flee the parking lot.  Eric Stilt, a witness at the scene, stated that he saw Kaler "[drag]" Davies "3 or 4 feet" when Kaler attempted to drive away in the van.  (Appellant's App. p. 87).  Similarly, Rocco R. Rigsby (Rigsby),

5

another witness at the scene, saw Kaler "drag" Davies a few feet before Davies stopped Kaler's vehicle. (Appellant's App. p. 88). Rigsby also stated that Kaler then restarted the vehicle and dragged Davies an additional "15 to 20 feet" before Davies let go. (Appellant's App. p. 88). From these facts, Davies very well could have suffered physical harm from Kaler's offense, even though he luckily did not.

In regards to his character, Kaler argues that he had turned his life around in prison and earned 51.2 college credits with a 3.74 grade point average from Indiana State University. Kaler also notes that he took responsibility for his offense and therefore saved the State and trial court the time and expense of a trial. Although acknowledging Kaler's achievements and his guilty plea, we again note that Kaler received a significant benefit—the dismissal of two felony charges—by pleading guilty. In addition, we find that the trial court's sentence was appropriate in light of Kaler's criminal history. During his 27 year criminal career, Kaler was convicted of 21 felonies, most all of which were for theft, receiving stolen property, criminal conversion, or other property crimes. He also violated his probation when he committed the instant offense. Based on this history, we cannot conclude that the trial court's sentence was inappropriate in light of Kaler's character.

## CONCLUSION

Based on the foregoing, we conclude that the trial court properly sentenced Kaler in light of the nature of his offense and his character.

Affirmed.

6

FRIEDLANDER, J. and MATHIAS, J. concur