**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**JAY RODIA**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

**FILED**
Oct 25 2012, 9:11 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SHARHONDA GUNN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1202-CR-157 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Robert R. Altice, Jr., Judge
Cause No. 49G02-1105-FC-35474

**October 25, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Sharhonda Gunn ("Gunn") was convicted after a jury trial of battery[1] as a Class D felony. She appeals, raising the following restated issue: whether sufficient evidence was presented to support her conviction because the evidence failed to clearly identify her as one of the women who harmed the victim.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Tiffany Murell ("Murell") has three young sons, the oldest of which is A.M., who was seven years old in February 2011. Murell and her sons lived with her sister, Shaneica Murell ("Shaneica"). A.M. and his brothers attended Little Dreamers Daycare ("the Daycare") in Indianapolis, Indiana, which was operated by Demetriese Gunn ("Demetriese").

A.M. spent the weekend of February 19, 2011 with his mother's cousin, Vernita Hunter ("Hunter"). During that weekend, Hunter was able to observe A.M. many times with his shirt off, and when he left on Sunday, he did not have any marks on his back, chest, or arms. When Murell saw A.M. again on Sunday and Monday evenings, she also saw him with his shirt off and observed no injuries to his back, no scratches to his body, and no bruises anywhere.

On Tuesday, February 22, 2011, Murell took A.M.'s brothers to the Daycare and took A.M. to school. That morning, she did not see any injuries to A.M.'s back or any scratches or bruises anywhere on his body. She only noticed a small red mark above his eye that he had received from playing and wrestling with his brothers over the weekend.

---

[1] *See* Ind. Code § 35-42-2-1.

Demetriese, who A.M. referred to as "Daycare Lady," *tr*. at 177, would regularly transport A.M. from school to the Daycare, and Shaneica would pick up A.M. and his brothers later. A.M. wore a uniform to school, which included a braided belt.

On February 22, 2011, Demetriese picked up A.M. from school and asked him whether he had kicked Hunter in her stomach several days before. A.M. told Demetriese to "get out of my business," and she responded that he did not have any business. *Tr*. at 178. Demetriese "snatched [A.M.] and threw [him] in the car" and "she ripped a piece of meat out of [his] mouth." *Id*. She pushed him, secured his seatbelt, and "kept scratching the inside of [his] mouth" with her fingernail until a piece of skin came out. *Id*. at 179. While driving back to the Daycare, Demetriese called her sister, Gunn, and asked her to come out to help Demetriese "drag" A.M. inside. *Id*. When they arrived at the Daycare, Demetriese dragged A.M. into the building by grabbing the back of A.M.'s shirt, which choked him. He was crying and told Demetriese that he could not breathe, and she responded that she did not care. When they got inside of the Daycare, Demetriese and Gunn were "trying to snatch [A.M.'s] belt off," and they broke it and hit A.M. with it. *Id*. at 181. Both women took off A.M.'s shirt and started hitting him on the back.

Demetriese sent a text message to Murell, demanding that she immediately pick up A.M. Murell was at work, so she asked Hunter to go pick up A.M. Hunter arrived at the Daycare, and the door, which was usually unlocked, was locked. Hunter knocked on the door and heard a "piercing scream" from A.M. *Id*. at 35. She began to knock louder, and eventually, Demetriese came to the door. As soon as Hunter entered, A.M. ran out of a room and grabbed onto Hunter's leg and would not let go. A.M. was crying and

3

holding the right side of his face. Hunter took him to her van, and A.M. told her that the "Daycare Lady" held him down while her sister "whipped him." *Id.* at 39. A.M. told Hunter his back hurt. When she took off his shirt, Hunter saw injuries to his back, inside his arms, and inside his mouth. A.M. had "big welts" on his back and scratches "up and around his neck and bruises on his arms." *Id.* at 45. His face was also red on one side. Hunter called the police.

Indianapolis Metropolitan Police Department Detective Eli McAllister ("Detective McAllister") met with A.M. and his family on February 23, 2011. Detective McAllister observed injuries to A.M. "all over his upper body" and took photographs of the injuries. *Id.* at 97. The detective observed that A.M. had marks on the center of his back, just between and below his shoulder blades, scratches at the base of his neck between his shoulders, scratches across the front of his body, a large scratch near his sternum, bruising on his left bicep, a scratch and abrasion on his right bicep, and scratches on his neck. Detective McAllister presented A.M. with a photographic array to determine the identity of the "daycare lady's sister." *Id.* at 103-04. A.M. selected a picture of Gunn, told the detective that she was the "daycare lady's sister," and wrote his name under her picture. *Id.* at 104.

On May 20, 2011, the State charged Gunn with battery as a Class D felony. A jury trial was held, during which A.M. was not able to make an in-court identification of Gunn. At the conclusion of the trial, the jury found Gunn guilty as charged. The trial court sentenced her to 545 days with 365 days suspended and 180 days executed. Gunn now appeals.

4

**DISCUSSION AND DECISION**

"When reviewing the sufficiency of the evidence to support a conviction, 'appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict.'" *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007) (quoting *McHenry v. State,* 820 N.E.2d 124, 126 (Ind. 2005)) (emphasis in original). It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Wright v. State,* 828 N.E.2d 904, 906 (Ind. 2005). "When appellate courts are confronted with conflicting evidence, they must consider it 'most favorably to the trial court's ruling.'" *Drane*, 867 N.E.2d at 146. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id*. It is therefore not necessary that the evidence "overcome every reasonable hypothesis of innocence." *Id*. at 147. "'[T]he evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.'" *Id*. (quoting *Pickens v. State,* 751 N.E.2d 331, 334 (Ind. Ct. App. 2001)).

Gunn argues that the State failed to present sufficient evidence to support her conviction for battery as a Class D felony. She specifically contends that the evidence failed to clearly identify her as one of the women who harmed A.M. This is because although testimony was presented that A.M. identified Gunn from a photograph array as one of the perpetrators of the crime, he was unable to identify her in court during his trial testimony as the Daycare Lady's sister. Gunn asserts that this evidence constituted equivocal eyewitness identification, which was not sufficient to support her conviction.

5

To convict Gunn of battery as a Class D felony, the State was required to prove beyond a reasonable doubt that Gunn was at least eighteen years old and that she knowingly or intentionally touched A.M., who was less than fourteen years old, in a rude, insolent, or angry manner, resulting in bodily injury. Ind. Code § 35-42-2-1.

Here, A.M. sufficiently identified Gunn as one of the women who battered him. He testified that the woman he called "Daycare Lady" called her sister to help "drag" him into the Daycare. *Tr.* at 179. "Daycare Lady" was identified as Demetriese by many witnesses, and Gunn was her sister. *Id.* at 41, 101, 126, 177. A.M. testified that Demetriese and her sister removed his shirt and belt, scratched him, and hit him on the back with his belt. *Id.* at 181-84. Less than three months after the crime occurred, A.M. selected Gunn's picture from a photograph array, identified her as the "daycare lady's sister," and wrote his name under her picture. *Id.* at 103-04, 186-87; *State's Ex.* 16. This evidence was sufficient to identify Gunn as one of the women who committed battery on A.M.

However, Gunn contends that A.M.'s inability to identify Gunn in court rendered his testimony contradictory. Any inconsistencies in identification testimony go only to the weight of that testimony, as it is the task of the fact-finder to weigh the evidence and determine the credibility of the witnesses. *Stewart v. State*, 866 N.E.2d 858, 862 (Ind. Ct. App. 2007). We do not weigh the evidence or resolve questions of credibility when determining whether the identification evidence is sufficient to sustain a conviction. *Id.* A.M. identified Gunn as one of the women who battered him on February 22, 2011, and he selected her picture from a photograph array less than three months after the crime.

6

The trial did not occur until almost ten months after the battery occurred. There is nothing contradictory about a seven-year-old child being able to indentify his attacker three months after the attack but not being able to do so nearly ten months later as appearances can change over time. A.M. consistently stated that the Demetriese and her sister were the two women who battered him. As his testimony was not contradictory, Gunn's argument is merely an invitation for us to reweigh the evidence, which we cannot do. *Wright,* 828 N.E.2d at 906. We conclude that sufficient evidence was presented to support Gunn's conviction for battery as a Class D felony.

Affirmed.

NAJAM, J., and MAY, J., concur.