**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JEFFREY G. RAFF**
Deputy Public Defender
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MARK F. JOHNSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  02A03-1305-CR-182 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Frances C. Gull, Judge
Cause No. 02D05-1210-FA-43

**January 29, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Here we are asked to determine whether the forty-five-year sentence appellant-defendant Mark Johnson received for Burglary[1] as a class A felony was inappropriate in light of the nature of his offenses and his character. More particularly, Johnson argues that, even when he admitted to breaking into the home of a mother and her children in the middle of the night, putting zip ties around the victims' arms and duct taping their faces, and holding them for several hours, he should instead be given the advisory sentence of thirty years. Concluding that Johnson's sentence was not inappropriate, we affirm the judgment of the trial court.

<u>FACTS</u>

On October 13, 2012, the Fort Wayne Police Department dispatched officers to the home of Elizabeth Fugate and Dorrion Jefferson in reference to a robbery. When the officers arrived, they found the home in disarray and discovered Elizabeth, Dorrion, and Leon Smith, who were tied up with duct tape and plastic zip ties. Elizabeth testified that she had awoken to find Johnson holding a gun to her head while her five-year-old child was next to her in the bed and stated that he then put the gun into her mouth and grabbed her by her hair. She also testified that Johnson said that if she screamed, he would kill her and her children. Johnson duct taped her eyes, nose, and mouth, and restrained her arms with zip ties. Elizabeth stated that Johnson was in her room for hours while she lay restrained with her child next to her. Elizabeth's stepson was across the hall in his bedroom, too terrified to come out.

---

[1] Ind. Code § 35-43-2-1

2

Dorrion testified that he returned home at around 5:00 in the morning with his friend Leon. When they entered the home, they were ambushed by Johnson and another man, pushed down to the floor, and restrained with duct tape and zip ties. Dorrion also testified that he was beaten, tased, kicked in the face, stabbed in the back, and left to lie on the ground for an hour and one half while he wondered if his family was okay. He saw a thin man, whom he later identified as Johnson, armed with a small handgun and giving orders. Leon, who was able to break free from his zip ties, called the police and alerted them to the situation.

Elizabeth told officers that she was missing $400 from her purse, the laptop she used for her classes, and that her 2007 black Dodge Charger had been stolen. In addition, Leon told the officers that his Dell laptop, handbag, and flash drive were taken. Officers were told to look for a stolen 2007 black Dodge Charger and given a description of Johnson and the second assailant. Officer J. Arnold saw a vehicle matching the description of the Charger and pursued it. When Officer Arnold turned on his overhead lights, the Charger accelerated, only stopping when it hit a pile of rocks and a yield sign. At that point, Johnson, who was driving the Charger, exited the vehicle and fell, dropping a handgun. Johnson then began to flee, at which point Officer Arnold yelled for him to stop. Johnson ran about fifty yards and then stopped, placing his hands in the air.

Johnson was the only occupant of the Charger. When the officer searched the vehicle, they found a Wii gaming console, a television, and a laptop computer. In addition, $748, a gold and black bracelet, duct tape, and a sock hat were discovered on

3

Johnson's person during a search incident to arrest. When the officers asked Johnson his name, he told them it was Mark Dillon. Through BMV records, the officers discovered his name was Mark Johnson. Dorrion and Leon separately identified Johnson as the thin man at the crime scene who gave orders while holding a handgun.

Johnson was charged with Count I, burglary as a class A felony; Count II, robbery as a class B felony; Count III, robbery as a class B felony; Count IV robbery as a class B felony; Count V, criminal confinement as a class B felony; Count VI, criminal confinement as a class B felony; Count VII, criminal confinement as a class B felony; Count VIII, auto theft as a class D felony; Count IX, resisting law enforcement as a class D felony; and Count X, carrying a handgun without a license as a class A misdemeanor. On March 26, 2013, Johnson pleaded guilty to counts I, II, III, and IV. The State dismissed counts V, VI, VII, VIII, IX, and X.

On April 23, 2013, the trial court held a sentencing hearing. At the hearing, the trial court considered Johnson's guilty plea and his remorse for his crime as mitigating circumstances. It considered his criminal record to be an aggravating circumstance. Johnson has a prior felony conviction for reckless homicide in 2001 and two misdemeanor convictions: one for possession of a handgun without a license in 2001 and another 2006 conviction for operating a vehicle while intoxicated. Elizabeth and Dorrion testified at the hearing that Elizabeth's child had nightmares, that Elizabeth had been forced to drop out of school, that they felt they needed to move from their home, and that the incident had destroyed their relationship. In light of this testimony, the trial court also

4

found the nature and circumstances of the crime and the impact on the victims to be aggravating factors. After weighing the mitigating and aggravating factors, the trial court sentenced Johnson to forty-five years executed on Count I, and merged the other counts into Count I.

Johnson now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

Johnson's only argument on appeal is that his sentence is inappropriate in light of the nature of his offenses and his character. As outlined in Indiana Rule of Appellate Procedure 7(B), we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. In reviewing a Rule 7(B) appropriateness challenge, we defer to the trial court. Stewart v. State, 866 N.E.2d 858, 866 (Ind. Ct. App. 2007). Under Rule 7(B), the question is not whether another sentence is more appropriate, but whether the sentence imposed is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006). The defendant bears the burden of persuading this Court that his sentence is inappropriate. Id.

### II. Appropriateness of the Sentence

Johnson argues that the forty-five-year sentence imposed by the trial court is inappropriate in light of the nature of his offense and his character. For a class A felony, the advisory sentence is thirty years, with a minimum sentence of twenty years and a

5

maximum sentence of fifty years. Ind. Code § 35-50-2-4. Here, the trial court found the nature of Johnson's offense to be "extremely, extremely aggravated." Sen. Tr. p. 16. As the trial court noted, there were weapons used, the victims of the crime were tied up, children were present, one victim was beaten and tased, another had a gun held to her head. Id. Johnson did not simply enter the home and take the property of the victims. Rather, he stayed in the home for hours, restrained them, and put them in prolonged fear of their lives. Id. at 10. As a result of his crime, Elizabeth's child suffered nightmares, Elizabeth dropped out of school, and the family felt they needed to move to a new home. Id. at 12. Additionally, Dorrion testified that the experience destroyed his relationship with Elizabeth, and that his son can no longer stay at their home. Id. at 15. As the trial court expressed, "[t]he fear that these people were placed in, I can't even imagine. I don't want to imagine." Id. at 30. Thus, the nature of the offense avails Johnson of nothing.

Johnson also argues that we should take into consideration his character and his guilty plea. However, we do not find that Johnson expressed full remorse for his crime. Johnson did not plead guilty to all the counts with which he was charged. When Johnson was apprehended the night of the homicide, he lied to police officers, telling them his name was Mark Dillon. Appellant's App. p. 23. At his sentencing hearing, Johnson continually contradicted the witnesses' testimony, and he claimed that Dorrion was lying when he stated that it was Johnson who beat him. Sen. Tr. p. 17-18.

Johnson also has a criminal record. He has a prior felony conviction for reckless homicide as well as two misdemeanor convictions: one for operating a vehicle while

intoxicated and the other for possession of a handgun without a license. It is clear that his past experiences with the law have not influenced him to change his character or behavior for the better. Despite his convictions, Jefferson has failed to become a law-abiding citizen.

Jefferson has a criminal history, and he committed an "extraordinarily violent act." Id. at 30. We conclude that the forty-five year sentence is not inappropriate in light of the nature of his offense and his character. Accordingly, we decline to revise his sentence.

The judgment of the trial court is affirmed.

NAJAM, J., and CRONE, J., concur.