## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**
Aug 31 2015, 8:42 am

*Kevin S. Smith*

**CLERK**
of the supreme court, court of appeals and tax court

ATTORNEY FOR APPELLANT

Thomas C. Allen
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Shamar D. Shelton,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 31, 2015

Court of Appeals Case No.
02A04-1502-CR-56

Appeal from the Allen Superior Court

The Honorable John F. Surbeck, Judge

Trial Court Cause No.
02D05-1406-FB-106

**Pyle, Judge.**

# Statement of the Case

Appellant/Defendant, Shamar D. Shelton ("Shelton"), appeals his sentence for his conviction of Class B felony unlawful possession of a firearm by a serious violent felon ("SVF").[1] On appeal, he asks us to revise his sentence under Appellate Rule 7(B). Because we conclude that his sentence was not inappropriate in light of the nature of his offense and his character, we decline to revise his sentence.

We affirm.

# Issue

Whether Shelton's sentence was inappropriate in light of the nature of his offense and his character.

# Facts

On June 11, 2014, Fort Wayne Police Department Officer David Tinsley ("Officer Tinsley") received a dispatch a little after midnight that there was a potential burglary in progress at a local residence. He and another officer, Officer Tim Hughes ("Officer Hughes"), both responded to the dispatch and arrived at the scene at the same time. The residence was a three-bedroom house with a detached garage. There was a five to six foot tall privacy fence in

---

[1] IND. CODE § 35-47-4-5. This statute was amended effective July 1, 2014, and Shelton's offense would now be considered a Level 4 felony. However, we will apply the version of the statute that was in effect at the time of Shelton's offense.

front of the house and a four to five foot tall chain link fence surrounding the backyard.

[4] When they arrived at the scene, Officer Tinsley approached the garage from the west side, and Officer Hughes approached from the east. As Officer Tinsley was walking beside the garage, he noticed that there were plastic oil cans by the fence at the rear of the house. He later testified that he found this evidence significant because frequently when a person breaks into a residence, that person will pile items so that they are easier to take.

[5] After noticing the oil cans, Officer Tinsley saw a man, who was later identified as Shelton, in the area between the detached garage and the house. He yelled at Shelton to stop and informed him that he was a police officer. Initially, Shelton complied with Officer Tinsley's orders and put his hands above his head. However, he then relaxed his hands and jumped over the chain link fence.

[6] Officer Hughes arrived at the backyard of the residence as Shelton jumped, and he followed Shelton over the fence. Shelton then jumped the privacy fence in front of the house and ran across the street into the yard of another house. Officer Hughes saw an object in Shelton's hand but could not identify what it was. Meanwhile, Officer Tinsley repeatedly yelled at Shelton to stop running and that they were the police, but Shelton did not stop. However, as Shelton was running, he changed directions quickly, slipped on the wet grass, and fell.

[7] After Shelton's fall, the officers approached him and took control of his arms. They discovered that there was a little flashlight on the ground by his head, as

well as a gun in a soft fabric holster. The gun did not belong to either of the police officers. Officer Tinsley also observed that Shelton was wearing gloves.

[8] By the point that they apprehended Shelton, several other officers had arrived at the scene. A K-9 officer issued commands for anyone remaining in the garage to come outside, and another man, later identified as Brandon Kyles, exited. Inside, the officers discovered that one of the garage's bays was empty, except for a pile of items in the middle of the floor. Officer Tinsley concluded that the pile, like the plastic oil cans, was consistent with preparation for a burglary. The officers also discovered that the door frame to the garage was damaged, "consistent with having been pushed or kicked in." (Tr. 141). One officer checked Shelton's record and found that he did not have a permit to carry a handgun.

[9] Subsequently, the officers called the owner of the residence, William Carswell ("Carswell"), who was eighty years old and staying at a cottage he owned an hour away. Carswell drove back to his residence in Fort Wayne and confirmed that when he had left the residence, the house and garage had both been locked and that the door jam of the garage had not been damaged. He also observed that the items found by the police were not in the condition in which he had left them. For example, he did not leave the oil cans in a pile by the back fence before he left, and he did not leave his belongings piled on the floor of the garage. In addition to the changed condition of his garage, Carswell identified that he was missing several items, including three lawn mowers, three chain saws, a compressor, a tool box with tools in it, and a battery charger.

[10] On June 17, 2014, the State charged Shelton with Class B felony unlawful possession of a firearm by an SVF; Class C felony burglary; and Class A misdemeanor resisting law enforcement. The trial court held a jury trial on December 3 and 4, 2014, and the jury found Shelton guilty as charged.

[11] Thereafter, on January 9, 2015, the trial court held a sentencing hearing and sentenced Shelton to fifteen (15) years for his unlawful possession of a firearm by an SVF conviction, five (5) years for his burglary conviction, and one (1) year for his resisting law enforcement conviction. The trial court ordered his sentences for unlawful possession of a firearm by an SVF and burglary to run consecutively, with his sentence for resisting law enforcement to run concurrently. The trial court found that Shelton's significant criminal history and Carswell's age were aggravating factors. Shelton now appeals his sentence.

## Decision

[12] On appeal, Shelton argues that we should revise his sentence for his conviction of unlawful possession of a firearm by an SVF under Appellate Rule 7(B) based on the nature of his offense and his character.[2] First, Shelton argues that the circumstances of his offense were not "unusual." (Shelton's Br. 10) As for his character, Shelton notes that even though he had an extensive criminal history, his past convictions were dissimilar in nature to the instant convictions, his juvenile convictions were almost fifteen years removed, and he had only had

---

[2] Shelton does not appeal his sentences from his other two convictions.

one previous conviction for a violent offense. He also notes that his presentence investigation report revealed a "number of positive aspects of his general character" because his "Family and Social Support domain level, his Peer Association domain level, and his Criminal Attitude and Behavior Patterns domain level were all moderate in range" and his "Neighborhood Problem domain level was low." (Shelton's Br. 13).

[13] Pursuant to Appellate Rule 7(B), a reviewing court may revise a sentence if, "after due consideration of the trial court's decision," it finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender. *Childress v. State*, 848 N.E.2d 1073, 1079-80 (Ind. 2006) (quoting App. R. 7(B)). Although this Court is not required to use "great restraint," we nevertheless exercise deference to a trial court's sentencing decision, both because Appellate Rule 7(B) requires that we give "due consideration" to that decision and because we recognize the unique perspective a trial court has when making decisions. *Stewart v. State*, 866 N.E.2d 858, 865-66 (Ind. Ct. App. 2007). The "principal role of appellate review should be to attempt to leaven the outliers and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). In addition, the defendant bears the burden of persuading this Court that his sentence is inappropriate. *Childress*, 848 N.E.2d at 1080.

[14] The sentencing range for a Class B felony is between six (6) and twenty (20) years with an advisory sentence of ten (10) years. Accordingly, Shelton's fifteen

(15) year sentence was five (5) years more than the advisory sentence for a Class B felony.

[15] However, we conclude that Shelton's sentence was not inappropriate in light of the nature of his offense and his character. Although the nature of his offense might not have been "unusual," it was a serious offense for him to possess a firearm, as an SVF, and run with the firearm through a neighborhood to escape police officers. (Shelton's Br. 10).

[16] Moreover, Shelton's character alone supports his sentence. *See Williams v. State*, 891 N.E.2d 621, 633 (Ind. Ct. App. 2008) (stating that revision of a sentence under Indiana Appellate Rule 7(B) requires the appellant to demonstrate that his sentence is inappropriate in light of *both* the nature of his offenses and his character). As the trial court noted—and contrary to Shelton's argument—Shelton had been convicted of a similar offense of burglary in the past. In addition, his criminal history was extensive. He had been adjudicated as a juvenile delinquent eight times between the ages of twelve and sixteen. Then, as an adult, he had received two felony convictions, including robbery and receiving stolen property, and nine misdemeanor convictions, including two convictions for resisting law enforcement. At the time of the sentencing hearing, Shelton was only thirty years old. As the trial court noted, "it is clear the way it continues to arise in almost every conviction here that [Shelton] has absolutely no intent of abiding by the rules of this community." (Sentencing Tr. 11). In light of this evidence of the nature of Shelton's offense and his character, we decline to revise his sentence under Appellate Rule 7(B).

Affirmed.

Vaidik, C.J., and Robb, J., concur.