# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 31 2019, 6:20 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Megan M. Smith
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Derid Becker,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff,* | October 31, 2019<br><br>Court of Appeals Case No.<br>19A-CR-503<br><br>Appeal from the Noble Circuit Court<br><br>The Honorable Michael J. Kramer, Judge<br><br>Trial Court Cause Nos.<br>57C01-1712-FD-4<br>57C01-1712-FD-5<br>57C01-1712-F6-50 |

**Robb, Judge.**

# Case Summary and Issue

[1] While on probation for a prior conviction, Derid Becker was charged with possession of a hypodermic syringe, a Level 6 felony. Becker was accepted into the Noble County Problem-Solving Court program ("Drug Court"). Pursuant to Becker's involvement in this program, he pleaded guilty to the charge and sentencing was continued pending his participation. Becker was thereafter sanctioned by the trial court for a variety of Drug Court violations and was ultimately terminated from the program. Consequently, the trial court sentenced Becker to two years imprisonment for possession of a hypodermic syringe. Becker appeals his sentence, raising one issue for our review: whether the two-year sentence was inappropriate in light of the nature of the offense and character of the offender. Concluding Becker's sentence was not inappropriate, we affirm.

# Facts and Procedural History

[2] On November 20, 2012, Becker pleaded guilty to two counts of theft and was sentenced to a total of two years imprisonment, with the sentence suspended to probation. Because of an existing sentence, Becker did not begin serving his probation until June 26, 2017. Four months later, during a probation search of Becker's residence, a hypodermic syringe modified for the injection of drugs was found under his couch. Becker admitted to his probation officer that the syringe belonged to him. The State filed a notice of probation violation in

Becker's theft cases and charged Becker with possession of a hypodermic syringe, a Level 6 felony.

[3] On December 14, 2017, Becker signed a participation agreement for Drug Court. Becker's Drug Court participation agreement required Becker, among other things, to: 1) attend and successfully complete all treatment recommendations and programs; 2) abstain from alcohol and non-prescribed drugs; 3) submit to random drug tests; 4) attend four support meetings per week during phase 1 of Drug Court; and 5) reside at a "half-way facility" and serve home detention until further court order. Appellant's Appendix, Volume II at 124-28, 131. If Becker successfully completed Drug Court, the State agreed to dismiss the pending probation violations against him.

[4] Pursuant to this agreement, in December 2017 Becker pleaded guilty to possession of a hypodermic syringe, a Level 6 felony, and admitted to violating the terms of his probation in the previous theft cases. The trial court continued sentencing while Becker participated in the Drug Court program.

[5] Over the next six months, the trial court found that Becker repeatedly violated Drug Court rules, sanctioning him ten times. Violations included missing required meetings, missing treatment appointments, neglecting to properly notify home detention officials of his travel plans, taking prescription medicine more frequently than prescribed, violating basic home detention requirements, failing to participate in community service as ordered, arriving late for probation appointments, and demonstrating belligerent behavior. During this

time period, Becker was also terminated from his half-way facility for behavior related to these violations.

[6]     On June 25, 2018, Becker's probation officer filed a Drug Court Violation Report alleging that Becker had violated the terms of his Drug Court participation agreement by being evicted from his half-way facility. The Drug Court team decided against recommending termination from the Drug Court at that time and instead recommended that Becker remain in custody until he could be placed in another half-way house and home detention. The trial court approved this recommendation.

[7]     After being released from jail into a new half-way house, Becker continued to commit violations. These new violations included failing to call the drug screen line and offering a diluted drug screen. Due to Becker's repeated and numerous violations, on December 19, 2019, the Drug Court team recommended that Becker be terminated from the Drug Court Program. On January 7, 2019, the trial court revoked Becker's participation in Drug Court and set a date for sentencing.

[8]     During the sentencing hearing, the trial court listed Becker's criminal history and the fact he committed the offense while on probation for two other offenses as aggravating factors. Further, the trial court noted Becker's numerous Drug Court violations prevented his participation in the program from being considered as a mitigating factor and further stated that it could find no other

mitigating factors. The trial court sentenced Becker to two years imprisonment. Becker now appeals his sentence.

# Discussion and Decision

## I. Standard of Review

We may review and revise criminal sentences pursuant to the authority derived from Article 7, section 6 of the Indiana Constitution. Indiana Appellate Rule 7(B) empowers us to revise a sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In reviewing a sentence, this court gives deference to the trial court's sentencing decision because Rule 7(B) requires us to give "due consideration" to the decision and we recognize the unique perspective of the trial court in making sentencing decisions. *Stewart v. State,* 866 N.E.2d 858, 866 (Ind. Ct. App. 2007). Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense and the defendant's character. *Stephenson v. State,* 29 N.E.3d 111, 122 (Ind. 2015). Our principal role in Rule 7(B) review is to "leaven the outliers." *Cardwell v. State,* 895 N.E.2d 1219, 1225 (Ind. 2008).

The defendant bears the burden to persuade this court that his or her sentence is inappropriate. *Childress v. State,* 848 N.E.2d 1073, 1080 (Ind. 2006). We may look to any factors appearing in the record in making such a determination. *Reis v. State,* 88 N.E.3d 1099, 1102 (Ind. Ct. App. 2017). The question under Rule

7(B) analysis is "not whether another sentence is *more* appropriate" but rather "whether the sentence imposed is inappropriate." *King v. State,* 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). Whether a sentence is inappropriate "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell,* 895 N.E.2d at 1224.

## II. Inappropriate Sentence

We begin with the advisory sentence in determining whether a sentence is inappropriate. *Childress,* 848 N.E.2d at 1081. The advisory sentence for a Level 6 felony is one year, with a minimum sentence of six months and a maximum sentence of two and one-half years. Ind. Code § 35-50-2-7(b). Becker was sentenced to two years, which exceeds the advisory sentence, but falls short of the maximum sentence allowed.

## A. Nature of the Offense

Becker was on probation for two separate theft convictions at the time he was charged with the instant offense. His probation for these crimes had started only four months prior to the syringe being found under his couch during a routine probation search. Becker was charged under Indiana Code section 16-42-19-18, which states: "A person may not possess with intent to: (1) violate this chapter [dealing with the possession, use, or sale of legend drugs]; or (2) commit an offense [related to controlled substances] described in IC 35-48-4; a hypodermic syringe or needle or an instrument adapted for the use of a controlled substance

or legend drug by injection in a human being." The statute does not require actual use of a drug. Rather, it requires the possession of a hypodermic needle adapted for the use of a controlled substance with the intent to commit a violation. *See Cooper v. State*, 171 Ind. App. 350, 359-60, 357 N.E.2d 260, 265 (1976) (stating that in order in to sustain a conviction for possession of instruments adapted to the use of narcotics, the State must prove that the defendant was in possession of the instruments and *had the intent to use them illegally*). Thus, Becker's argument that he did not actually use an illegal substance with the modified syringe, and that this fact should inform our perspective of the nature of his offense, is moot. Further, the record makes clear that Becker had, in fact, modified a syringe to get high on Suboxone, Percocet, methamphetamine, and methadone. Becker's probation officer stated that Becker "was using, um, methamphetamine, Suboxone, methadone and Percocet none of which was prescribed to him[.]" Transcript, Volume 2 at 5. Becker himself stated that his drugs of choice were opiates and Suboxone and upon obtaining a valid prescription, "I shot my own prescription." *Id.* at 35.

[13] The nature of the offense, in light of Becker's criminal history, demonstrated disregard for the law, and continued improper use of drugs (prescription or otherwise) provides an adequate foundation for the Becker's sentence.

## B. Character of the Offender

[14] Becker argues that his character supports a reduction in his sentence. Specifically, Becker states that because he pleaded guilty to this crime, his sentence should be reduced from the near-maximum. The significance of a

guilty plea as a mitigating circumstance varies from case to case. *Anglemyer v. State,* 875 N.E.2d 218, 221 (Ind. 2007) (opinion on reh'g). A guilty plea may not be significantly mitigating when it does not demonstrate the defendant's acceptance of responsibility or when the defendant receives a substantial benefit in return for the plea. *Id.*

[15] Here, the trial court specifically declined to find Becker's guilty plea a mitigating factor. We agree that Becker's guilty plea in this case does not reflect well upon his character because of his past criminal history, commission of an offense while on probation, and termination from Drug Court.

[16] Becker further argues that his "violations of Drug Court rules are relatively minor[.]" Amended Brief of the Appellant at 17. Even to the extent this is true, the regular and recurring violation of Drug Court rules demonstrates Becker is unable to comply with even the most basic requirements imposed by law. The Drug Court team excused many of Becker's violations until it became clear that he would be unable to comply for any extended period of time. Indeed, Becker was violating rules "almost on a weekly basis[.]" Tr., Vol. 2 at 228. Becker's character does not merit sentence revision under Rule 7(B).

[17] Based on the facts and circumstances of this case, we conclude that Becker's two-year sentence is not inappropriate in light of the nature of his offense and his character. We decline to revise it under Appellate Rule 7(B).

# Conclusion

[18] For the reasons set forth above, we conclude that a two-year sentence is not inappropriate in light of Becker's offense and his character. Therefore, we affirm.

[19] Affirmed.

Mathias, J., and Pyle, J., concur.