## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 28 2017, 11:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Dacia N. Ward,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | April 28, 2017<br><br>Court of Appeals Case No.<br>84A05-1611-CR-2714<br><br>Appeal from the Vigo Superior Court<br><br>The Honorable David R. Bolk, Judge<br><br>Trial Court Cause Nos.<br>84D03-1606-F5-1587<br>84D03-1502-F6-475 |

**Pyle, Judge.**

## Statement of the Case

Dacia N. Ward ("Ward") appeals his sentence for his conviction of Level 6 felony failure to return to lawful detention[1] and his sentence enhancement for his adjudication as an habitual offender.[2] He argues that his sentence was inappropriate in light of the nature of his offense and his character. Because we conclude that his sentence was not inappropriate, we affirm the trial court's sentence.

We affirm.

## Issue

> Whether Ward's sentence was inappropriate under Indiana Appellate Rule 7(B).

## Facts

Following convictions for Level 6 felony possession of methamphetamine and Class A misdemeanor possession of paraphernalia in Cause Number 84D03-1502-F6-475 ("Cause 475"), Ward was placed in a Vigo County Work Release Program on June 8, 2016. He was advised of the rules and procedures for work release, and he signed the work release center's "Resident Rules and Regulations" form. He also initialed the following rule:

---

[1] IND. CODE § 35-44.1-3-4(c).

[2] I.C. § 35-50-2-8. This statute has since been amended, but we will apply the statute that was in effect at the time of Ward's offense.

> 7. ESCAPE: If Resident leaves the facility without being scheduled out or released by a VCCC staff member, fails to return to the facility at scheduled return time, or if a Resident is somewhere outside the facility without prior approval he/she will be charged with the crime of escape.

(State's Ex. 2 at 2).

[4] Two days after his entry into the program, Ward was authorized to leave work release at 8:00 a.m. to search for a job. He was required to return to work release at noon that day but failed to return as required. He never contacted work release to explain his whereabouts and never returned to the work release center.

[5] As a result of Ward's failure to return to the work release center, the State charged him with Level 5 felony escape and Level 6 felony failure to return to lawful detention and alleged that Ward was an habitual offender. Additionally, the Probation Department alleged that he had violated his probation in Cause 475.

[6] At a jury trial on the charges, the State presented evidence of the above facts. A case manager with work release testified that individuals in the work release program were instructed to call "immediately" if circumstances arose while they were away from work release and they were unable to return by the expected time. (Tr. Vol. 2 at 32). The jury found Ward not guilty of his escape charge but guilty of Level 6 felony failure to return to lawful detention.

[7] Next, the jury heard evidence on Ward's habitual offender allegation. The State presented evidence that Ward had prior unrelated convictions for Class C felony burglary in 2012 and Class B felony burglary in 2004, in addition to his conviction for Level 6 felony possession of methamphetamine for which he had been placed in work release. At the conclusion of the evidence, the jury found that Ward was an habitual offender.

[8] Thereafter, at a separate hearing, Ward admitted to violating his probation for his Level 6 felony possession of methamphetamine conviction in Cause 475 when he failed to return to work release.

[9] The trial court held a hearing on Ward's probation revocation sanction and his sentence in the instant cause. At the hearing, the State requested that Ward receive the maximum sentence, noting that Ward had been convicted of five prior misdemeanors, five prior felonies, and had violated probation multiple times. Ward's counsel proffered the mitigating factors that Ward had a teenage daughter and elderly father that needed him, that Ward had not received the addiction counseling he needed, and that Ward suffered from mental illness. In response, the State noted that even though Ward continued to have substance addiction problems, he had been through several treatment programs for his addictions. Specifically, he had "received plenty of options and opportunities at treatment" and yet "continue[d] to reoffend." (Tr. Vol. 4 at 13). Ward testified that he was remorseful for his actions and said that he had not known "what to

do at the time" of his offense because his brother had killed himself.[3] (Tr. Vol. 4 at 15).

[10] At the conclusion of the hearing, the trial court found that Ward's probation violation, the violation of his pre-trial release, and criminal history at the time he committed his offense were aggravating factors. The trial court noted that the significance of Ward's criminal history was "over and above" that which was required to adjudicate Ward an habitual offender. (Tr. 18). Specifically, Ward had "essentially been on probation, parole, [or] had a case pending[] since [1990] or [1992]." (Tr. 18). Based on these factors, the trial court ordered Ward to serve the remainder of his previously suspended sentence in Cause 475. It also sentenced Ward to two and one half (2½) years for his failure to return to lawful detention conviction in the instant case and ordered it to be enhanced by five (5) years for his adjudication as an habitual offender. Ward now appeals.

## Decision

[11] On appeal, Ward argues that his aggregate sentence of seven and one half (7½) years was inappropriate in light of the nature of his offense and his character.[4] While sentencing decisions rest within the sound discretion of the trial court, a reviewing court may revise a sentence pursuant to Appellate Rule 7(B) if, "after

---

[3] Ward did not testify to the date or circumstances of his brother's death other than to say that his brother killed himself.

[4] Ward does not appeal the trial court's order in Cause 475 that he serve his previously suspended sentence.

due consideration of the trial court's decision," it finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender. *Anglemyer v. State*, 868 N.E.2d 482, 493 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007); *Childress v. State*, 848 N.E.2d 1073, 1079-80 (Ind. 2006) (quoting Ind. App. R. 7(B)). This Court is not required to use "great restraint," but we nevertheless exercise deference to a trial court's sentencing decision, both because Appellate Rule 7(B) requires that we give "due consideration" to that decision and because we recognize the unique perspective a trial court has when making decisions. *Stewart v. State*, 866 N.E.2d 858, 865-66 (Ind. Ct. App. 2007). The "principal role of appellate review should be to attempt to leaven the outliers and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008).

[12] The sentencing range for Ward's Level 6 felony conviction was six (6) months to two and one half (2½) years, with an advisory sentence of one (1) year. I.C. § 35-50-2-7. The sentencing range for his habitual offender enhancement was two (2) to six (6) years. I.C. § 35-50-2-8. Accordingly, Ward's aggregate sentence was one (1) year less than the maximum sentence he could have received.

[13] Ward argues that this sentence was inappropriate in light of the nature of his offense because the offense neither caused nor threatened serious harm to

people or property. He also claims that he failed to return to work release because his brother killed himself.

[14] While Ward did not threaten serious harm to people or property, it is notable that Ward failed to return to work release merely two days after he signed the work release center's rules and regulations, which provided that he was required to return to the center at a designated time. He also failed to call the center and report his whereabouts or his reasons for failing to return to the center.

[15] As for his character, Ward argues that much of his criminal history was related to his severe drug addiction and mental illness. He also notes that he had a difficult childhood and that he was sincerely remorseful for the "damage he had caused to his family and to the court by failing to return to work release." (Ward's Br. 8).

[16] We, however, do not find that the trial court's sentence was inappropriate. Ward had a significant criminal history at the time of the current offense, including five prior felony convictions and five prior misdemeanor convictions. He had been offered leniency several times in the past through probation and parole and had violated the conditions of his probation multiple times. As the trial court noted, Ward has "essentially been on probation, parole, [or] had a case pending[] since [1990] or [1992]." (Tr. 18). Also, with respect to Ward's drug addictions, the trial court addressed his arguments and told him: "after twenty-three (23) years, you know, you've got to figure out a way, or to find a

way to deal with it outside the criminal justice system, and you've been—for whatever reason, you've been unable or unwilling [] to do that . . . ." (Tr. Vol. 4 at 19). We agree with the trial court's evaluation. While Ward has struggled with drugs for a significant portion of his life and had a difficult childhood, at some point he has to find a way to deal with those factors outside of the criminal justice system. His extensive criminal history and his violations of probation—including the probation he was on when he committed the instant offense—indicate that he has not done so. Moreover, they demonstrate his blatant disregard for the law and the past leniency he has been granted. Accordingly, we find that the trial court's sentence was not inappropriate.

[17] Affirmed.

[18] May, J., and Brown, J., concur.