## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 20 2017, 9:03 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James D. Crum
Coots, Henke & Wheeler, P.C
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Matthew Duke Coonce, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | June 20, 2017 <br><br> Court of Appeals Case No. <br> 29A02-1609-CR-2054 <br><br> Appeal from the <br> Hamilton Superior Court <br><br> The Honorable Steven R. Nation <br><br> Trial Court Cause No. <br> 29D01-1507-F2-6625 |

**Kirsch, Judge.**

[1] Matthew Duke Coonce appeals his six-year sentence for battery causing serious bodily injury,[1] a Level 5 felony.

[2] We affirm.

## Facts and Procedural History

The facts relevant to the charges for which Coonce was convicted and sentenced[2] show that on July 27, 2015, Brian Cowell, Austin Ellis, Coonce, and several other people were at Cowell's parents' home where Cowell was living at the time. His parents were out of town. On the evening before, Cowell and Coonce had taken Cowell's parents' car to buy drugs. While Cowell was in the dealer's home, Coonce left with the car. When Cowell returned home at around 7:30 p.m. on the next day, July 27th, he found Coonce had returned with the car. Despite Coonce's wish to remain, Cowell insisted that he leave. Cowell then went upstairs, while Ellis, Kyle Wiles, Coonce, and Coonce's friends remained downstairs.

[3] The facts concerning Coonce's altercation with Ellis are significant because they offer the background for the altercation between Coonce and Cowell. Ellis went into the kitchen to reheat some leftover food, and Coonce followed him. Ellis and Coonce talked, and Ellis asked Coonce twice about when Coonce's

---

[1] *See* Ind. Code § 35-42-2-1(f)(1).

[2] Coonce does not appeal his sentences for other convictions that were each to be served concurrent with this six-year sentence.

ride was coming to pick him up. When Ellis finished preparing his food, he turned toward Coonce, and Coonce struck Ellis in the face, breaking his nose. Ellis was shocked and tried to ask Coonce what he was doing, but Coonce proceeded to hit Ellis in the face again. Ellis put up his hands to stop the blows from landing on his face and head, but Coonce hit him several more times in the face, causing injuries to Ellis's forehead, cheek, and eye area. Ellis's blood dripped on the kitchen floor, counters, stove, and appliances. Coonce stood between the refrigerator and the counter, blocking Ellis from leaving the kitchen.

[4] Cowell heard Ellis's screams and immediately rushed downstairs, where he found Ellis against the cabinets on the kitchen floor in a defensive position. Cowell attempted to stop Coonce by engaging him in "hand-to-hand combat." *Tr*. v1 at 121, 188. Cowell hit Coonce in the face, and Coonce responded by blocking Cowell's exit from the kitchen and hitting him repeatedly. Coonce hit Cowell in the face, in his ear, in his throat, and in the side of his neck in rapid succession. Cowell was knocked down on the kitchen floor, stunned and bleeding.

[5] Meanwhile, Ellis escaped into the hallway, where he lost consciousness. When Ellis awoke, Coonce was telling a female whom he had brought to the house to tie up Ellis with large zip ties that they had brought with them. Coonce told Ellis, "If you move or make any sounds, I'll cut you." *Id*. at 188. The female then had Ellis fasten the zip ties around his own wrists and ankles. While Ellis was being tied up, Cowell called 911 and then dropped the phone so that

emergency services could locate the house. In the family room, Cowell reengaged in combat with Coonce and his friends to "buy Ellis some time to get him free," and thus allowed Ellis to escape for a short time before he lost consciousness again. *Id*. at 123-24, 189.

[6] Coonce beat Cowell, inflicting multiple blows to Cowell's head and face until he eventually knocked Cowell unconscious. Cowell sustained very painful injuries to his hand, forehead, jaw, and ear. One of the bruises lasted for several months after the beating. The beating caused blood to drip on the family room carpet and in the entryway. When Ellis regained consciousness, the house was quiet, so he quickly went upstairs, barricaded himself in the bathroom, removed the zip ties from his hands, and called 911.

[7] When the police responded to the scene, they found the garage door of the house open and a large flat screen television in the middle of the garage. Inside the house, the officers found Wiles in the living room area holding a backpack that contained photography lenses and bags of jewelry, and they arrested Wiles immediately. The officers found Cowell on the family room floor, unconscious, in a fetal position, and convulsing. EMTs assisted Cowell in regaining consciousness. The officers then found Ellis locked in the bathroom and assisted him with his injuries. They recovered the bloody zip ties used on Ellis from the sink. Ellis and Cowell were both transported to Riverview Hospital for treatment of their injuries.

[8] When Cowell's parents returned home, they discovered many items missing including their Chevrolet Equinox, which was later found at the Hamilton Town Center and returned to them. It was extensively damaged, with the OnStar system removed, the interior of the vehicle slashed and trashed, the speakers damaged, and the windshield shattered. The damages to the car amounted to approximately $16,000. The car had a false license plate that was not registered to it. A package containing zip ties that were consistent with those used to tie up Ellis was also found inside the car.

[9] Wiles, Ellis, and Cowell were interviewed at the police department, and Wiles provided the officers with Coonce's phone number. The police telephoned Coonce, and he denied stealing anything from Cowell, accused the men of raping him, admitted that he "beat that fucker dude's ass," threatened that somebody would kill "those motherfuckers" because they are "fucking with the wrong person," and said that he would come talk to the police. *Tr.* v1 at. 222, 226; *St. Ex.* 88A. Coonce never met with the police, and Wiles later provided the police with specific information about Coonce's whereabouts. The police set up surveillance of the semi-abandoned property where Coonce was located and obtained an arrest warrant for Coonce. The U.S. Marshal Service had to extricate Coonce from that property. Coonce was arrested and interviewed, at which time he again claimed he was "sexually molested," admitted beating Cowell, and claimed he never took anything from the house. *Tr.* v2 at 7; *St. Ex.* 89A.

[10] Coonce was arrested and charged on July 31 with aggravated battery, a Level 3 felony; battery, a Level 5 felony; criminal confinement, a Level 3 felony; battery, a Class A misdemeanor; criminal confinement, a Level 5 felony; and auto theft, a Level 6 felony. After a jury trial, Coonce was found guilty of Level 5 felony battery, Class A misdemeanor battery, Level 6 felony criminal confinement as a lesser included offense of Level 5 felony criminal confinement, and Level 6 felony auto theft.

[11] Coonce was sentenced to concurrent terms of six years for the Level 5 felony battery, one year for the Class A misdemeanor battery, two and one-half years for the Level 6 felony criminal confinement, and two and one-half years for the Level 6 felony auto theft, all to be served concurrently, resulting in a total sentence of six years, to run consecutive to a sentence in Marion County. Coonce appeals only the six-year sentence for Level 5 felony battery on Cowell.

## Discussion and Decision

[12] Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Guzman v. State*, 985 N.E.2d 1125, 1131 (Ind. Ct. App. 2013). "An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id*.

[13] When imposing a sentence in a felony case, the trial court must provide a reasonably detailed sentencing statement explaining its reason for imposing the

sentence. *Id*. The defendant bears the burden of persuading the appellate court that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Under Indiana Appellate Rule 7(B), this court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender. *Id.* at 1079-80. On appeal, we exercise deference to a trial court's sentencing decision, as required by Appellate Rule 7(B) and because we recognize the unique perspective a trial court has when making decisions. *Stewart v. State,* 866 N.E.2d 858, 865-66 (Ind. Ct. App. 2007).

[14]   In sentencing Coonce, the trial court identified the following aggravating circumstances: (1) Coonce's lack of truthfulness with his probation officer; (2) Coonce's behavior while incarcerated; (3) Coonce's high risk for committing further felonies; (4) Coonce's criminal history; and (5) Coonce's probation violations. *Tr*. v3 at 143. Coonce argues that the trial court erred in sentencing him to the maximum because the victim was partly culpable for the actions that led to the charges because he entered into the fight between Coonce and Ellis. Although Coonce argues that Cowell reported that his only lasting injury was a bruise that lasted for months, the evidence shows that Cowell suffered lacerations to his ear, was unconscious, and suffered a seizure after the beating.

[15]   When considering the nature of the offense, the advisory sentence, here three years (with a range of one to six years), is the starting point to determine the appropriateness of a sentence. *See Johnson v. State*, 986 N.E.2d 852, 856 (Ind.

Ct. App. 2013) (citing *Anglemyer v. State,* 868 N.E.2d 482, 494 (Ind. 2007*), clarified on reh'g*, 875 N.E.2d 218 (2007)). Coonce argues that even though his criminal history is rather lengthy, he is not the worst Level 5 felony offender. Because he is not the worst offender, and because the nature of the offense was not the worst, he argues, his fully executed, maximum term, sentence should be revised.

[16] Even a minor criminal record reflects poorly on a defendant's character, and in this case, it is evident that Coonce has a significant criminal history. *See Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). Coonce's criminal history consists of approximately twenty-seven arrests, five prior felony convictions and twenty-two prior misdemeanor convictions, including felony theft, criminal conversion, felony auto theft, intimidation, domestic battery, and arson. He has previously been placed on probation approximately fifteen times and has had that probation revoked numerous times. After committing the instant offense in Hamilton County, Coonce committed new felony offenses in Allen County and Marion County, and had two active warrants out for his arrest. In addition, he had several disciplinary incidents for criminal activity while at the Hamilton County Jail and was placed in a padded cell due to his behavior as recently as July 2016.

[17] In addition to his prior convictions, Coonce admitted to being a drug dealer and to daily alcohol use, daily methamphetamine use, daily marijuana use, crack cocaine use, powder cocaine use, and heroin use. He also admitted that he never sought substance abuse treatment in the past because he never felt that he

needed it. In his sentencing interview, he said that he was unemployed and receiving disability benefits due to the "mental disabilities" of ADHD and PTSD. *Appellant's App*. v3 Conf. at 13-14. Furthermore, Coonce expressed little remorse for his crimes, which also reflects negatively on his character. With respect to the instant offenses, Coonce specifically stated, "play with fire you get burned" and that Cowell was lucky that Coonce did not kill him. *Id*. at 14, 16; *St. Ex*. 88A. Coonce lied to the probation officer completing his Presentence Investigation Report about his criminal history. He also admitted that he "likes doing things that are risky and could get him in trouble" and that he "gets an adrenaline dump" from committing crimes. *Id*. at 15. Nothing before us reveals anything in Coonce's character that would support revision to a lesser sentence. Furthermore, Coonce was sentenced to half of the 12-year maximum sentence he faced if he had received fully-consecutive sentences. *See* Ind. Code §§ 35-50-2-6, 35-50-2-7, 35-50-3-2. His aggregate six-year-sentence is not inappropriate in light of the nature of his offense and his character. Coonce also challenges the maximum sentences arguing that unconsciousness cannot be used as an aggravator because Cowell's unconscious state served to elevate this battery from a Class A misdemeanor, or Level 6 Felony, to the Level 5 felony. Ind. Code § 35-42-2-1(g)(1). Ind. Code § 35-31.5-2-292(2), defines "serious bodily injury" to include a bodily injury that causes unconsciousness. Because the sentencing judge did not cite the seriousness of the injuries or the fact that Cowell was knocked unconscious, they are not relevant to our review of his sentence.

[18]     Coonce also challenges the imposition of the maximum term for a Level 5 felony where Cowell admitted that he physically confronted Coonce twice. If we considered the culpability, severity and damage, as set out in *Keller v State*, 987 N.E.2d 1099, 1122 (Ind. Ct. App. 2013), Coonce argues that we must consider the mitigating factors listed in Indiana Code § 35-38-1-7.1(b). Consideration (3) under the statute is whether the victim of the crime induced or facilitated the offense, and (5) is whether the person acted under strong provocation. Coonce acknowledges that these factors were not applicable to the other counts, but that the evidence points unmistakably to the fact that Cowell instigated the confrontation between him and Coonce by throwing himself into the mix and striking Coonce first. Furthermore, Coonce argues, not only did Cowell do this upon initially throwing himself into the fray, but after calling 911, he re-engaged Coonce by physically assaulting him. Cowell concedes that provocation is not a recognized defense in this setting but argues that the legislature certainly intended for it to be a consideration for sentencing purposes. We are not persuaded by Coonce's argument. Had Cowell not intervened in the fight between Coonce and Ellis, we can only speculate as to what would have happened. Furthermore, Ellis was a guest in Cowell's home; Coonce had been told to leave.

[19]     Based on the facts of this case and Coonce's criminal history, his six-year-sentence for Level 5 felony battery on Cowell is not inappropriate in light of the nature of the offense and his character.

[20]     Affirmed.

Mathias, J., and Altice, J., concur.