

FILED

Nov 21 2018, 10:20 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald R. Shuler
Barkes, Kolbus, Rife & Shuler, LLP
Goshen, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy
Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jason M. Morris,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | November 21, 2018<br><br>Court of Appeals Case No.<br>18A-CR-1738<br><br>Appeal from the Elkhart Superior Court<br><br>The Honorable Gretchen S. Lund, Judge<br><br>The Honorable Eric Ditton, Magistrate<br><br>Trial Court Cause No.<br>20D04-1708-CM-1593 |

**Robb, Judge.**

# Case Summary and Issues

After Jason Morris was convicted and sentenced in city court, he sought a trial de novo in superior court. Following a bench trial, the trial court found Morris guilty of public indecency, a Class A misdemeanor, and sentenced him to one year executed. This case presents three issues for our review: (1) whether the evidence is sufficient to sustain Morris' conviction; (2) whether the trial court abused its discretion by imposing a harsher sentence than the city court; and (3) whether Morris' sentence is inappropriate in light of the nature of the offense and his character. Concluding the evidence is sufficient to support Morris' conviction, the trial court did not abuse its discretion in sentencing Morris, and Morris' sentence is not inappropriate, we affirm.

# Facts and Procedural History

In April 2016, Morris picked up fourteen-year-old M.Mc. for an arranged sleep over with his stepdaughter, M.M. Morris was accompanied by a friend, Leann, and his younger daughter. Before returning to his house, Morris dropped his younger daughter off at a class and then drove to Goshen General Hospital so Leann could drop something off. Morris parked near the main entrance of the hospital and Morris and M.Mc. remained in his truck while Leann went inside. M.Mc. asked Morris for a cigarette and he asked M.Mc. what she was "going to do for it[?]" Transcript, Volume II at 41. Morris began discussing a 2015 pool party that Morris, his wife, M.Mc., and M.M. attended where Morris' wife had "pantsed him[,]" and M.Mc. caught a glimpse of Morris' penis. *Id*. at 40.

Morris asked M.Mc. if she "liked seeing [his penis]" and asked her if she would mind seeing it again. *Id*. at 41. After M.Mc. declined, Morris unzipped his pants and exposed his penis. *Id*. Although M.Mc. was sitting in the back seat of the truck, she testified that she saw Morris' genitals when he exposed himself to her. M.Mc. looked away, stated she needed to use the restroom, and the two went inside the hospital. After M.Mc. used the restroom, Leann was ready and the three left.

[3] M.Mc. then went to Morris' home for the sleepover with M.M., revealed the incident to M.M., and attempted to contact her mother. The next day, Morris' wife confronted M.Mc. and accused her of stealing cigarettes. Ultimately, M.Mc. went home early, but prior to leaving, someone in Morris' family "threatened to kill [her] family if [she] said anything." *Id*. at 46. Because M.Mc. was "distraught, shaking, upset, and crying" when she returned, her mother took her to see her therapist and M.Mc. disclosed the incident, which the therapist then reported to child protective services. Brief of Appellee at 7; *see also* Tr., Vol. II at 67, 77

[4] In December 2016, the State charged Morris with public indecency, a Class A misdemeanor. Morris was first tried in in Goshen City Court on May 25, 2017, and was found guilty of public indecency and sentenced to a one-year suspended sentence with reporting probation. Morris subsequently sought a trial de novo by filing a notice of appeal and the case was transferred to the Elkhart Superior Court. Following a bench trial on June 4, 2018, during which

M.Mc. testified, the trial court found Morris guilty and sentenced him to one year executed in the county jail. Morris now appeals.

# Discussion and Decision

## I. Sufficiency of the Evidence

Morris challenges the sufficiency of the evidence supporting his conviction. Specifically, he contends his conviction was based solely on M.Mc.'s testimony, which he alleges was "not substantively corroborated by other evidence in the record" and her "mere allegations[,]" absent corroborating evidence, do not satisfy the burden of proof. Appellant's Brief at 10.

Our standard of review for sufficiency of the evidence claims is well settled. *D.J. v. State*, 88 N.E.3d 236, 241 (Ind. Ct. App. 2017). Upon review, we do not reweigh the evidence or judge the credibility of the witnesses. *Purvis v. State*, 87 N.E.3d 1119, 1124 (Ind. Ct. App. 2017). We consider only the evidence most favorable to the verdict and the reasonable inferences drawn therefrom. *Id.* We will affirm a defendant's conviction if "there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Stewart v. State*, 866 N.E.2d 858, 862 (Ind. Ct. App. 2007).

To convict Morris, the State was required prove each element of public indecency beyond a reasonable doubt. Ind. Code § 35-41-4-1(a). "A person who knowingly or intentionally, in a public place . . . appears in a state of

nudity with the intent to arouse the sexual desires of the person or another person . . . commits public indecency, a Class A misdemeanor." Ind. Code § 35-45-4-1(a)(3).

[8] After the bench trial, the trial court found:

> Considering all of the evidence, the credible testimony of [M.Mc.] and her mother, and the inconsistent and contradictory explanations provided by [Morris], the Court finds, beyond a reasonable doubt, that [Morris] committed the crime of Public Indecency. The Court finds that the parking lot of the Goshen Hospital is a 'public place' under Indiana Code § 35-45-4-1. The Court observed many different individuals in the parking lot, going in and out of the hospital, and driving around near [Morris'] red truck. The Court also finds that in exposing his penis, [Morris] had the intent to arouse the sexual desires of himself or of [M.Mc.].

Appellant's Appendix, Volume 2 at 106.

[9] Morris argues M.Mc.'s testimony, without corroborating evidence, is not sufficient to support his conviction and that reliance solely upon M.Mc.'s testimony is problematic under the incredible dubiosity rule. The incredible dubiosity rule allows this court to "impinge upon a [fact finder's] responsibility to judge the credibility of the witnesses only when confronted with 'inherently improbable' testimony." *Moore v. State*, 27 N.E.3d 749, 754 (Ind. 2015). The rule is applied in limited circumstances, namely where there is "1) a sole testifying witness; 2) testimony that is inherently contradictory, equivocal, or the result of coercion; and 3) a complete absence of circumstantial evidence."

*Id*. at 756. Application of the incredible dubiosity rule is "rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it." *Love v. State*, 761 N.E.2d 806, 810 (Ind. 2002).

[10] In applying these factors, we conclude the incredible dubiosity rule is inapplicable to the present case as there were multiple testifying witnesses and M.Mc.'s testimony was not inconsistent within itself. *See Smith v. State*, 34 N.E.3d 1211, 1221 (Ind. 2015) (explaining that the second prong is satisfied "only when the witness's trial testimony was inconsistent within itself, not that it was inconsistent with other evidence or prior testimony"). After hearing the evidence, the trial court explained in its order that it found M.Mc.'s testimony credible:

> [Morris] wants the Court to believe that [M.Mc.] made up a story that [Morris] exposed his penis to her; told the false story to her therapist at the Bowen Center; told the same false story to a detective during a formal interview; lied under oath to the Judge of the Goshen City Court during the first bench trial; then lied again, under oath, to this Court. Such a conclusion is not reasonable.

Appellant's App., Vol. 2 at 105.

[11] Moreover, M.Mc.'s testimony cannot be considered "inherently improbable" because evidence presented at trial corroborated her testimony. First, M.Mc.'s mother testified that M.Mc. was "distraught," shaking, and crying when she picked M.Mc. up and drove her to the Bowen Center to see her therapist where

M.Mc. disclosed the incident to her mother and her therapist. Tr., Vol. II at 77. Second, the detective assigned to the case conducted a formal interview with M.Mc. and testified that M.Mc. told him that Morris exposed himself to her in the parking lot of Goshen Hospital. Lastly, the State introduced a Goshen Hospital surveillance video from the date of the incident showing Morris and M.Mc. walking into the hospital together, substantiating M.Mc.'s testimony.

[12] Even absent any corroborating evidence of M.Mc.'s testimony, however, it is well settled that the uncorroborated testimony of a single witness can be sufficient to sustain a conviction on appeal, *Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012), and Morris concedes this in his brief. *See* Appellant's Br. at 11-12. Therefore, M.Mc.'s testimony alone is sufficient to sustain Morris' conviction.

[13] Additionally, Morris contends that it is our role "to assess the caliber and quality of the relevant evidence[.]" *Id*. at 12. In its order, the trial court stated it had "consider[ed] each witness' ability and opportunity to observe; the behavior of each witness while testifying; any interest, bias, or prejudice each witness may have; any relationship each witness had with others involved in the case; and the reasonableness of each witness' testimony considering the other evidence" in making its findings, ultimately finding M.Mc.'s testimony credible. Appellant's App., Vol. 2 at 105. Morris' argument is an improper invitation for this court to reweigh the evidence, which we cannot accept. *See Purvis*, 87 N.E.3d at 1124.

The record reveals "substantial evidence of probative value" supporting each element of public indecency from which a reasonable trier of fact could have found Morris guilty beyond a reasonable doubt. *Stewart*, 866 N.E.2d at 862. Therefore, the evidence is sufficient to support Morris' conviction.

## II. Sentencing

### A. Abuse of Discretion

Morris contends the trial court abused its discretion by imposing a harsher sentence than what the city court imposed because doing so is contrary to Indiana law and violates due process. Sentencing decisions are within the sound discretion of the trial court and this court reviews only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (2007). A trial court abuses its discretion when its decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Stokes v. State*, 947 N.E.2d 1033, 1036 (Ind. Ct. App. 2011), *trans. denied*.

Morris relies on three Indiana cases from the 1970s which "stand for the proposition that the trial court's imposition of a more severe sentence than the Goshen City Court sentence in this case is improper and should be corrected."[1]

---

[1] *See Whited v. State*, 256 Ind. 618, 271 N.E.2d 513 (1971); *Eldridge v. State*, 256 Ind. 113, 267 N.E.2d 48 (1971); and *Anderson v. State*, 155 Ind. App. 465, 293 N.E.2d 222 (1973).

Appellant's Br. at 17. Although the cases Morris cites precluded the imposition of a greater sentence on retrial after an appeal from a lower court, these cases were decided prior to our supreme court's adoption of the Indiana Trial De Novo Rules, effective January 1, 1998. These rules were adopted pursuant to Indiana Code section 34-8-1-3, which authorizes the supreme court to

> adopt, amend, and rescind rules of court that govern and control practice and procedure in all the courts of Indiana. These rules must be promulgated and take effect under the rules adopted by the supreme court and thereafter all laws in conflict with the supreme court's rules have no further force or effect.

[17] A defendant is entitled to appeal a city court judgment to "the circuit, superior, or probate court of the county and [be] tried de novo." Ind. Code § 33-35-5-9(a); *see also* Ind. Trial De Novo Rules. Under the Trial De Novo Rules, following a misdemeanor trial in city or town court, "[a] defendant who has a statutory right to an appeal after a trial for a misdemeanor in a city or town court may request and shall receive the trial *de novo* as provided in this Rule." Ind. Trial De Novo Rule 3(A). The court to which the case is assigned has "full jurisdiction of the case and of the person" once the request for a trial de novo is filed. Ind. Trial De Novo Rule 3(C)(2).

[18] The adoption of the Indiana Rules of Evidence guides our interpretation of the relationship between the Trial De Novo Rules and common law. After our supreme court adopted the Rules of Evidence in 1994, our supreme court acknowledged that the Rules of Evidence "generally superseded previously

existing common law[.]" *Specht v. State*, 734 N.E.2d 239, 240 (Ind. 2000) (explaining that when the supreme court's committee proposed the adoption of a particular rule of evidence, the committee specifically stated its proposed rule "preserves prior Indiana Law" on that issue). Similarly, we conclude the Trial De Novo Rules supersede existing case law as it pertains to trials de novo. Well aware of the existing case law, the court adopted the Trial De Novo Rules, which do not bar a court from imposing a greater sentence than an inferior court after retrial on appeal.

[19] Common sense reinforces this conclusion. The very definition of a trial de novo trial means a "new trial on the entire case – that is, on both questions of fact and issues of law – conducted as if there had been no trial in the first instance." Black's Law Dictionary (10th ed. 2014). Restraining a court's ability to sentence a defendant by prohibiting the court from imposing a greater sentence is inherently inconsistent with the nature and definition of a trial de novo. Therefore, we cannot conclude the trial court abused its discretion by imposing a greater sentence than the city court.

## B. Inappropriate Sentence

[20] Alternatively, Morris argues the nature of the offense and his character do not warrant his one-year sentence, which is the maximum possible sentence for a Class A misdemeanor. *See* Ind. Code § 35-50-3-2. Morris contends his sentence is inappropriate because his criminal history is minor and his offense was brief and non-violent.

Indiana Appellate Rule 7(B) provides this court the authority to "revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is in appropriate in light of the nature of the offense and the character of the offender." The question is not whether another sentence is more appropriate, but whether the sentence imposed is inappropriate. *Fonner v. State*, 876 N.E.2d 340, 344 (Ind. Ct. App. 2007). Although we may consider any factors in the record when conducting 7(B) review, *Croy v. State*, 953 N.E.2d 660, 664 (Ind. Ct. App. 2011), sentencing is "principally a discretionary function" of the trial court to which we afford considerable deference. *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). On appeal, the defendant must persuade this court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Ultimately, whether a defendant's sentence is inappropriate is based on "our sense of culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell*, 895 N.E.2d at 1224.

Morris argues the nature of the offense does not warrant the maximum sentence because the nature of his offense "meets the very definition of public indecency[,]" was of "limited duration," and did not involve violence or threats of violence. Appellant's Br. at 18. We begin our analysis of the nature of the offense with the advisory sentence. *Reis v. State*, 88 N.E.3d 1099, 1104 (Ind. Ct. App. 2017). Although the sentencing range for a Class A misdemeanor does

not include an advisory sentence, it provides for a maximum allowable sentence of one year. Ind. Code § 35-50-3-2.

[23] The nature of the offense is found in the details and circumstances surrounding the offense and the defendant's participation therein. *Perry v. State*, 78 N.E.3d 1, 13 (Ind. Ct. App. 2017). Here, the trial court described Morris' offense as "egregious" given that his victim was only fourteen years old. Tr., Vol. II at 156. Morris was also in a position of trust when he committed the offense, as the victim was his stepdaughter's friend and M.Mc.'s mother entrusted Morris to safely take her daughter to a sleepover with his step-daughter. *See Bennett v. State*, 883 N.E.2d 888, 894 (Ind. Ct. App. 2008) (considering a defendant used his position of trust as a father to commit sex crimes in the nature of the offense portion of a 7(B) analysis), *trans. denied*. Although Morris contends that the non-violent nature of his offense supports a lesser sentence, our supreme court has held that the "absence of physical harm is not an automatic mitigating circumstance such that it would require a lesser sentence than would otherwise be imposed." *Neale v. State*, 826 N.E.2d 635, 638 (Ind. 2005). The circumstances surrounding Morris' offense do not render his sentence inappropriate.

[24] Morris contends his sentence is inappropriate in light of his character. A defendant's life and conduct are illustrative of his or her character. *Washington v. State*, 940 N.E.2d 1220, 1222 (Ind. Ct. App. 2011), *trans. denied*. "Even a minor criminal record reflects poorly on a defendant's character," *Reis*, 88 N.E.3d at 1105, and the significance of the prior record "varies based on the

gravity, nature, and number of prior offenses in relation to the current offense." *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). As to Morris' character, his criminal history is comprised of a felony conviction for sexual misconduct with a minor, charges for disseminating obscene materials, and check deception. While this matter was pending, Morris pled guilty to theft and check deception and entered into a diversion agreement for violating the compulsory school attendance requirement. The record reveals that Morris also failed to satisfactorily complete probation for the theft charge.

[25] At the sentencing hearing, the trial court focused on the gravity of Morris' criminal history:

> It's troubling to me, sir, that when I look at your record, you were charged with possession of obscene material and literature and sexual misconduct with a minor in the late 90s and you were convicted as a felon of sexual misconduct with a minor. And the victim in this case was a minor and that's very, very troubling. In addition, you have those two charges for check deception and you have a conviction for theft . . . .
>
> As you stand here right now, according to your records check, you've got a pending compulsory school attendance violation case . . . . While all of this is going on, you go out and pass a bad check to Menards and now you're here today on that and on the displaying your genitals to a 14-year-old. I echo some of the comments by the State. This is serious. Yes, you can say this is just a misdemeanor. This is a very serious offense; I take this very seriously. It is absolutely inappropriate for you to engage in that behavior; to sit in a truck and expose your penis to a 14-year-old. And it's inappropriate, especially, in the light of the fact that

> you have the prior conviction for sexual misconduct with a minor.

Tr., Vol. II at 155.

[26] Morris attempts to minimize the significance of his previous conviction of sexual misconduct with a minor by arguing that it was his only felony conviction and is remote, occurring "nearly twenty (20) years ago, mere months after [he] turned eighteen (18)." Appellant's Br. at 19. Despite these factors, however, the trial court found this prior offense significant in relation to the current offense. In addition to his previous criminal history, the trial court noted that while this matter was pending, Morris committed additional crimes to which he plead guilty. Despite Morris' history with our justice system and his previous felony conviction for a similar crime against a juvenile, he was not deterred from committing the current offense. *See Rutherford*, 866 N.E.2d at 874. The trial court sentenced Morris within the statutory range, a task within its discretion, and Morris has failed to persuade us that his sentence is inappropriate in light of the nature of the offense and his character.

# Conclusion

[27] For the foregoing reasons, we conclude the evidence sufficiently supports Morris' conviction, the trial court did not abuse its discretion in sentencing Morris to the maximum possible sentence, and his sentence is not inappropriate. Accordingly, we affirm.

[28]    Affirmed.

Baker, J., and May, J., concur.