## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 21 2019, 8:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kurt A. Young
Nashville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Austin Howard Keever, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | May 21, 2019 <br><br> Court of Appeals Case No. 18A-CR-2653 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Angela Dow Davis, Judge <br><br> Trial Court Cause No. 49G16-1803-F6-7307 |

**Robb, Judge.**

# Case Summary and Issue

[1] A jury found Austin Keever guilty of strangulation, a Level 6 felony, and not guilty of domestic battery as a Level 6 felony or criminal mischief, a Class B misdemeanor. The trial court entered judgment of conviction on the strangulation count and sentenced Keever to 910 days, all suspended to probation. Keever appeals his conviction, claiming it was not supported by sufficient evidence. Concluding the evidence was sufficient to prove Keever committed the offense of strangulation, we affirm.

# Facts and Procedural History

[2] The evidence most favorable to the verdict shows that Keever and Audrey St. John were involved in a relationship from early 2017 to February 2018. St. John moved into Keever's home in July 2017 and moved most of her belongings out of the home in December 2017. She returned to Keever's home frequently after December, however; sometimes at his invitation, sometimes uninvited.

[3] St. John arrived at Keever's home on February 27, 2018, and stayed the night. While she was there, she saw a text on Keever's phone indicating someone was trying to set Keever up with another girl and it upset her. The next morning, a male friend of St. John's called her and Keever became upset. They argued and Keever took St. John's phone and tried to bend or break it. When St. John tried to take her phone back, Keever "pushed [her] up against the wall with his

hand." Transcript of Evidence, Volume II at 50. As Keever squeezed St. John's neck with his right hand, St. John tried to get his hand off her and scratched him. Keever let go of St. John's throat and kicked her phone across the room. As St. John scrambled to pick it up, Keever grabbed her arm and pulled her to the ground. St. John testified that Keever "was on top of me, choking me with both hands, and like lifting my head up off the ground and like yelling at me." *Id*. at 53. St. John "couldn't really breathe[,]" could not speak, and felt light-headed and scared. *Id.* St. John felt pain as Keever choked her and the pain continued the next day. Eventually, Keever let her go, got up, and went into the bathroom. Keever threw something at St. John that hit her in the face and caused her to bleed. When Keever realized St. John was bleeding, he got a wet paper towel and held it to her head. Although St. John said she wanted to leave, Keever would not let her until she convinced him she just needed to step outside for a moment and would not call the police. St. John left the house, locked herself in her car, and was able to contact 911. Photos taken of St. John that same day show extensive bruising around her neck, as well as scratches and bruises on her arms and a cut above her right eyebrow.

[4] The State charged Keever with strangulation, a Level 6 felony; domestic battery resulting in moderate bodily injury, a Level 6 felony; and criminal mischief, a

Class B misdemeanor.[1]  A jury found Keever guilty of strangulation but not guilty of domestic battery or criminal mischief.  Keever now appeals.

# Discussion and Decision

## I.  Standard of Review

[5]  When reviewing the sufficiency of the evidence required to support a criminal conviction, we do not reweigh the evidence or judge the credibility of the witnesses.  *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009).  We consider only the evidence supporting the verdict and any reasonable inferences that can be drawn therefrom.  *Morris v. State*, 114 N.E.3d 531, 535 (Ind. Ct. App. 2018), *trans. denied.*  Thus, we consider conflicting evidence most favorably to the verdict.  *Silvers v. State*, 114 N.E.3d 931, 936 (Ind. Ct. App. 2018).  "We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt."  *Bailey*, 907 N.E.2d at 1005.  It is not necessary for the evidence to overcome every reasonable hypothesis of innocence; it is sufficient if an inference may reasonably be drawn from the evidence to support the verdict.  *Silvers*, 114 N.E.3d at 936.[2]

---

[1] Additional charges of criminal confinement and interference with the reporting of a crime were dismissed before trial.

[2] Keever briefly mentions the standard for reviewing a claim of incredible dubiosity but does not argue that the "very specific circumstances" in which the rule applies are present here.  *See* Brief of Appellant at 12 (quoting *Smith v. State*, 34 N.E.3d 1211, 1221 (Ind. 2015)).  This argument, to the extent it was raised at all, is

# II. Evidence of Strangulation

[6] Keever was found guilty of strangulation, a Level 6 felony. In order to convict Keever of this offense, the State had to prove that he 1) knowingly or intentionally; 2) in a rude, angry, or insolent manner; 3) applied pressure to St. John's throat or neck, obstructed her nose or mouth, or applied pressure to her torso; 4) in a manner that impeded her normal breathing or blood circulation. Ind. Code § 35-42-2-9(c).

[7] As stated in the facts above, St. John testified the argument began when a male friend called her cell phone and Keever became angry and choked her. Keever testified the argument began because St. John found text messages on his phone she did not like and began "hitting, clawing, [and] attacking" him. Tr., Vol. II at 202. Nonetheless, Keever concedes that an altercation took place on February 28, 2018, and argues that, while it is apparent "that the two engaged in mutual combat," the issue is "who was the aggressor," and his conviction "rests upon . . . mere speculation that he was the aggressor." Br. of Appellant at 13-14. Although Keever never specifically articulates in his brief that he is challenging the evidence rebutting a claim of self-defense, this appears to be the crux of his argument.

waived because it is not supported by cogent argument. *See* Ind. Appellate Rule 46(A)(8)(a); *Burnell v. State*, 110 N.E.3d 1167, 1171 (Ind. Ct. App. 2018).

[8] "A person is justified in using reasonable force against any other person to protect [himself] . . . from what [he] reasonably believes to be the imminent use of unlawful force." Ind. Code § 35-41-3-2(c). To prevail on a claim of self-defense, the defendant must show that he was in a place he had a right to be; did not provoke, instigate, or participate willingly in the violence; and had a reasonable fear of bodily harm. *Wilson v. State*, 770 N.E.2d 799, 800 (Ind. 2002). However, "a mutual combatant, whether or not the initial aggressor, must declare an armistice before he or she may claim self-defense." *Id.* at 801; *see* Ind. Code § 35-41-3-2(g)(3). Moreover, "[a] claim of self-defense will fail if the person uses more force than is reasonably necessary under the circumstances." *Weedman v. State*, 21 N.E.3d 873, 892 (Ind. Ct. App. 2014) (quotation omitted), *trans. denied*. The standard of review for a challenge to the sufficiency of the evidence to rebut a claim of self-defense is the same as the standard for any challenge to the sufficiency of the evidence. *Wilson*, 770 N.E.2d at 801. "If a defendant is convicted despite his claim of self-defense, [we] will reverse only if no reasonable person could say that self-defense was negated by the State beyond a reasonable doubt." *Id.* at 800-01.

[9] Keever claims his conviction rests on speculation that he was the initial aggressor. We note first that St. John plainly testified that Keever was the initial aggressor and the jury clearly believed her rendition of the facts, which is not speculation, but a credibility determination left to the trier of fact. *See Chambless v. State*, 119 N.E.3d 182, 192 (Ind. Ct. App. 2019) ("[I]t is the jury's role to weigh conflicting evidence."), *trans. denied*. However, whether or not he

was the initial aggressor, his self-defense claim fails. Even if we accepted Keever's rendition of how the altercation started, he acknowledges he and St. John engaged in "mutual combat," *see* Br. of Appellant at 14, does not claim that he had any fear of bodily harm, and the State presented evidence that Keever responded with more force than was reasonably necessary under the circumstances. St. John testified that she could barely breathe as Keever choked her, that she felt light-headed and felt pain, and that the pain persisted the next day. The photographs of St. John's bruises depict clear finger marks around her neck. This evidence was sufficient to rebut Keever's claim of self-defense and to prove that he committed the offense of strangulation.[3]

# Conclusion

[10] The State presented evidence of probative value such that a reasonable trier of fact could have concluded Keever was guilty of strangulation beyond a reasonable doubt. We therefore affirm his conviction.

[11] Affirmed.

Baker, J., and Najam, J., concur.

---

[3] Keever also argues that although jury verdicts in criminal cases are not subject to review on grounds they are inconsistent, *see Beattie v. State*, 924 N.E.2d 643, 648 (Ind. 2010), the fact that the jury found him guilty of strangulation but not of domestic battery "is relevant in determining whether the jury based its decision on the evidence produced or upon suspicion, conjecture, conclusion, guess, opportunity, or scintilla," because "[i]f there was sufficient evidence of strangulation, there was clearly evidence of domestic battery," Br. of Appellant at 15. We disagree with Keever's premise, as the charge of domestic battery was based upon the laceration to St. John's head.