## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 27 2020, 8:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David W. Stone
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tiffany A. McCoy
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Dre'quez Redfield,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 27, 2020

Court of Appeals Case No.
19A-CR-2497

Appeal from the Madison Circuit Court

The Honorable Angela Warner Sims, Judge

Trial Court Cause No.
48C01-1810-F2-2652

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Dre'quez Redfield (Redfield), appeals his sentence following his conviction for burglary with a deadly weapon, a Level 2 felony, Ind. Code § 35-43-2-1(3)(A); attempted armed robbery, a Level 3 felony, I.C. §§ 35-42-5-1(a)(1), 35-41-5-1; and criminal confinement while armed with a deadly weapon, a Level 3 felony, I.C. § 35-42-3-3(a), -(b)(2)(A).

We affirm.

# ISSUES

Redfield presents the court with two issues, which we restate as:

(1)  Whether the trial court abused its discretion in identifying the aggravating circumstances; and

(2)  Whether his sentence is inappropriate given the nature of his offenses and his character.

# FACTS AND PROCEDURAL HISTORY

In 2018, Redfield and Jarrod King (King) were both separately dealing marijuana in Anderson, Indiana.  King purchased marijuana from Redfield on one occasion.  Redfield had also once been briefly at King's home in the 2300 block of Chase Street.

On October 17, 2018, King was at home on Chase Street with his girlfriend, Kayla Rusk (Rusk), who was eight-months pregnant at the time.  Redfield had

texted King offering marijuana for sale, but King had rejected the offer, telling Redfield that his prices were too high. Around 6:30 p.m., Redfield appeared unannounced at King's home. King was surprised to see Redfield but allowed him to enter. A physical altercation between Redfield and King ensued. While Redfield and King fought, Jason Hart (Hart) entered King's home and participated in the altercation. Rusk heard the altercation and came to the living room to investigate. King handed Rusk two back packs filled with over six pounds of marijuana and told her to run.

[6] Rusk fled to the home of her next-door neighbor, Chastity Kube (Kube), who was also pregnant at the time. Unbeknownst to Kube, Rusk dumped the two marijuana-filled backpacks in Kube's shower and pulled the shower curtain shut. Shortly thereafter, Redfield kicked open Kube's front door. Kube ran to her bedroom and attempted to barricade herself inside. Redfield pushed open the bedroom door, pinning Kube against the wall. Redfield pointed a gun at Kube's head and demanded repeatedly to know "where it was." (Transcript Vol. I, p. 118). Kube had no idea what Redfield was seeking and was scared for her life and the life of her unborn baby. Kube eventually extricated herself from the bedroom and fled her home. As she fled, she saw a man in a red hoodie coming from the area of her back yard. Afterwards, she discovered that the backdoor to her home had been broken in and her home rifled.

[7] Rusk and neighbors called 9-1-1. After investigators spoke with King, Redfield and Hart were quickly developed as suspects. On October 17, 2018, the State filed an Information, charging Redfield with two Counts of burglary of King

and Kube, both as Level 2 felonies; armed robbery of King, a Level 3 felony; attempted armed robbery of Kube, a Level 3 felony; and three Counts of criminal confinement of King, Rusk, and Kube, all as Level 3 felonies. On August 29, 2018, the State amended the armed robbery charge to Level 3 felony attempted armed robbery.

[8] On September 4, 2019, the trial court convened Redfield's three-day jury trial and granted the State's motion to dismiss the criminal confinement charges pertaining to King and Rusk. The jury found Redfield guilty of burglary of Kube's home, attempted armed robbery of Kube, and criminal confinement of Kube. The jury acquitted Redfield of all the other charges.

[9] On September 24, 2020, the presentence investigation report (PSI) was filed. Redfield told the PSI investigator that the offenses were the result of "a drug deal gone bad . . . Even the dude got on the stand and told him it was a misunderstanding." (Appellant's App. Vol. II, p. 156). Redfield has a history of prescription medication abuse starting from the age of fifteen. Redfield reported that he was high on Adderall, Suboxone, Percocet, and Xanax at the time of the offense and stated to the PSI investigator that he could not recall the details of the offenses. Redfield strongly denied to the PSI investigator that he had held a gun to Kube's head and thought he had been guilty of residential entry at most, not burglary. Redfield told the PSI investigator that he did not believe that the criminal justice system was fair and asked, "How can people get on the stand and just lie on you?" (Appellant's App. Vol. II, p. 158).

[10] The PSI detailed Redfield's criminal record. As a juvenile, Redfield had been adjudicated delinquent for possession of cocaine and operating a motor vehicle without ever receiving a license in 2012. He was sentenced to formal probation. In 2013, Redfield was adjudicated delinquent for resisting law enforcement and received probation and substance abuse treatment. As an adult, in 2014 Redfield pleaded guilty to Level 6 felony cocaine possession and was sentenced to one year and 128 days of probation. Approximately one month after he had been arrested on the cocaine possession charge, Redfield was arrested for marijuana possession, leaving the scene of an accident, operating while intoxicated on a controlled substance, and driving while suspended. Redfield ultimately pleaded guilty to operating while intoxicated on a controlled substance and received a 361-day sentence that was suspended to probation. In 2015, Redfield pleaded guilty to Level 6 felony resisting law enforcement and, on November 15, 2016, was sentenced a one-year sentence, suspended to probation. On October 23, 2018, the State filed a notice of violation of probation in the resisting law enforcement case, and on November 19, 2018, Redfield's probation was revoked. In the Case/Offense Information section of the PSI, the portion titled "On Probation/Parole at Offense:" was filled in "Yes." (Appellant's App. Vol. II, p. 151).

[11] Kube filed a victim's impact statement with the trial court. Following the offenses, Kube experienced stress-induced, pre-term labor and had to be hospitalized. She was subsequently put on bed rest and delivered her baby prior to its due date. Kube missed work immediately after the offenses, during her

pregnancy complications, and for Redfield's trial and was placed on probation at her employment due to absence. Kube continues to experience anxiety, loss of concentration, and nightmares regarding the offenses.

[12] On September 30, 2019, the trial court held Redfield's sentencing hearing. During his allocution, Redfield told the trial court that he took responsibility for the offenses. The trial court found Redfield's criminal record that included two felony convictions, one for drug offense and one for a violent offense, was an aggravating circumstance. The trial court found the fact that Redfield was on probation at the time of the instant offenses to be a second aggravating circumstance. The trial court acknowledged Redfield's expression of remorse but declined to extend it any significant mitigating weight due to Redfield's prior statements diminishing his acceptance of responsibility. The trial court found that the aggravators outweighed the mitigators. The trial court sentenced Redfield to twenty-five years for burglary, thirteen years for attempted armed robbery, and thirteen years for criminal confinement, to be served concurrently, and with five years suspended to probation.

[13] Redfield now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Aggravating Circumstances*

[14] Redfield asserts that the trial court abused its discretion when it found that his criminal record and the fact that he was on probation at the time of the offenses were aggravating circumstances. So long as a sentence imposed by a trial court

is within the statutory range for the offense, it is subject to review only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). An abuse of the trial court's sentencing discretion occurs if its decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. 868 N.E.2d at 490. A trial court abuses its discretion when it fails to enter a sentencing statement at all, its stated reasons for imposing sentence are not supported by the record, its sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or its reasons for imposing sentence are improper as a matter of law. *Id*. at 490-91.

[15] As to his criminal record, Redfield contends that his only violent prior offenses were his true-finding for resisting law enforcement and his Level 6 felony conviction for resisting law enforcement and that "the Supreme Court recognized that the significance of a criminal record can vary with the types of offense in the record and the offenses for which sentence is being imposed." (Appellant's Br. p. 10). Redfield argues that for "purposes of sentencing for the burglary with deadly weapon and attempted armed robbery, [his] record of petty offenses do not justify the near-maximum sentence which was imposed." (Appellant's Br. p. 11). Redfield essentially challenges the weight the trial court accorded to his criminal record. However, after the General Assembly adopted our present advisory sentencing scheme in 2005, a trial court is no longer obligated to identify and weigh the aggravating and mitigating circumstances

upon rendering its sentence. *Anglemyer*, 868 N.E.2d at 491. Rather, it may impose any sentence authorized by law once it has entered its sentencing statement. *Id.*; *see also* I.C. § 35-38-1-7.1(d). As a result, the relative weight ascribed by the trial court to any aggravating and mitigating circumstances is no longer subject to our review. *Anglemyer*, 868 N.E.2d at 491.

[16] As to the aggravating circumstance that he was on probation at the time he committed the instant offenses, Redfield argues that "[i]t is far from clear that [Redfield] was on probation based on the PSI," which we take to be a challenge to the evidence supporting this aggravator. (Appellant's Br. p. 11). The PSI noted that on October 23, 2018, which was six days after Redfield committed the instant offenses, the State filed a notice of violation of probation in Redfield's 2015 felony resisting law enforcement case, and on November 19, 2018, Redfield's probation was revoked. The Case/Offense Information section of the PSI indicated that Redfield was on probation at the time of the offenses. Redfield did not object to this information in his PSI or correct it at his sentencing hearing. In light of this evidence, we conclude that, contrary to Redfield's assertions, the trial court did not abuse its discretion in finding this aggravating circumstance because it was supported by the record.

## II. *Appropriateness of Sentence*

[17] Redfield request that we review the appropriateness of his sentence and asserts that his twenty-five-year aggregate sentence is overly-harsh. "Even when a trial court imposes a sentence within its discretion, the Indiana Constitution authorizes independent appellate review and revision of this sentencing

decision." *Hoak v. State*, 113 N.E.3d 1209, 1209 (Ind. 2019). Thus, we may revise a sentence if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offenses and the character of the offender. *Id.* The principal role of such review is to attempt to leaven the outliers. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). The defendant bears the burden to persuade the reviewing court that the sentence imposed is inappropriate. *Robinson v. State*, 91 N.E.3d 574, 577 (Ind. 2018).

## A. *Nature of the Offenses*

[18] When assessing the nature of an offense, the advisory sentence is the starting point that the legislature selected as an appropriate sentence for the particular crime committed. *Perry v. State*, 78 N.E.3d 1, 13 (Ind. Ct. App. 2017). Redfield was convicted of burglary as a Level 2 felony and attempted armed robbery and criminal confinement as Level 3 felonies. A Level 2 felony has a sentencing range of between ten and thirty years, with an advisory sentence of seventeen and one-half years. I.C. § 35-50-2-4.5. A Level 3 felony has a sentencing range of between three and sixteen years, with an advisory sentence of nine years. I.C. § 35-50-2-5(b). Therefore, Redfield faced a potential sentence of sixty-two years. Redfield was sentenced to moderately-enhanced sentences of twenty-five years for the Level 2 felony and thirteen years each for the Level 3 felonies, to be served concurrently.

[19] When reviewing the nature of the offense, we look to the "the details and circumstances of the commission of the offense and the defendant's participation." *Perry*, 78 N.E.3d at 13. Here, Redfield had a physical

altercation with King over marijuana that spilled over onto an innocent party, Kube. Kube had no part in King's drug dealing and only became involved in the events of October 17, 2018, because Rusk fled from Redfield into her home. Redfield broke through Kube's front door in pursuit of Rusk and held a gun to Kube's head in an attempt to force her to divulge the whereabouts of the marijuana she knew nothing about. Kube was pregnant at the time. Kube reported that after the offenses, she experienced pre-term labor and had to be hospitalized. Due to stress and anxiety caused by the offenses, Kube's life was disrupted when she had to be put on bed rest to protect her pregnancy, and her ability to sleep and concentrate has been affected. Kube reported that she delivered her baby pre-term, and she continues to experience anxiety due to the offenses. In addition, her work has been impacted by the absences she has incurred as a result of Redfield's offenses.

[20] Redfield contends that "[n]othing in this case distinguishes the offenses at issue from the run of the mill crimes of that sort however. They do not fall in the category of the near worst of those offenses." (Appellant's Br. p. 13). We find this argument unpersuasive for at least two reasons. Redfield's offenses were more egregious than run-of-the-mill burglary, attempted armed robbery, and criminal confinement because he involved an innocent party who was pregnant whose only connection to these events was that she gave refuge to an extremely-pregnant neighbor who appeared to be in distress. In addition, Redfield received only moderately-enhanced, concurrent sentences, and, therefore, we find any argument about "near-maximum" sentences to be

inapplicable to his case. (Appellant's Br. p. 13). In short, Redfield has failed to persuade us that his sentence is inappropriate in light of the nature of his offenses.

### B. *Character of the Offender*

Redfield also urges us to revise his sentence in light of his character. Upon reviewing a sentence for inappropriateness, we look to a defendant's life and conduct as illustrative of his character. *Morris v. State*, 114 N.E.3d 531, 539 (Ind. Ct. App. 2018), *trans. denied*. Redfield was twenty-three years old at sentencing. He has already amassed a criminal record of true-findings for cocaine possession, operating without a license, false informing, and resisting law enforcement as well as convictions as an adult for cocaine possession, operating while intoxicated, and resisting law enforcement. Thus, Redfield has substantial criminal record that includes drug-related and violent offenses. In addition, it is evident from the record that Redfield was actively engaged in dealing marijuana in Anderson and was abusing prescription medication, so he was not living a law-abiding life apart from his record of criminal convictions. Redfield has received the benefit of probation on several occasions and was on probation when he committed the present offenses. Redfield professed to have accepted responsibility for the offenses, yet this rings hollow in light of his statements to the PSI investigator denying that he confined Kube using a gun, that witnesses against him at trial lied, and that he could not remember the details of the offenses because of his intoxication, despite the fact that he had given a detailed account of the offenses two days after they occurred when he

was taken into custody. Given Redfield's criminal record and his apparent lack of acceptance of responsibility for the offenses, we cannot conclude that his sentence is inappropriate in light of his character.

[22] Redfield's argument regarding his character is as follows:

> Neither does [Redfield] fall in the category of the worst offender. He is a drug offender, a traffic offender and has committed low level resisting law enforcement felonies but he is clearly not in the worst class of offender.

(Appellant's Br. p. 13). As noted above, the trial court did not impose a maximum sentence in this case, so there is nothing indicating it considered Redfield to be among the worst type of offender. Even if Redfield had received a maximum sentence, the rule that maximum offenses are most appropriate for the worst offenders "is not an invitation to determine whether a worse offender could be imagined, as it is always possible to identify or hypothesize a significantly more despicable scenario[.]" *Kovats v. State*, 982 N.E.2d 409, 416 (Ind. Ct. App. 2013). Accordingly, Redfield has failed to convince us that his sentence is inappropriate given his character.

## CONCLUSION

[23] Based on the foregoing, we conclude that Redfield's sentence is not inappropriate given the nature of his offenses and his character.

[24] Affirmed.

[25] May, J. and Altice, J. concur