## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 05 2020, 8:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Carlos I. Carrillo
Greenwood, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Douglas Edward Akridge, Jr.,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | November 5, 2020<br><br>Court of Appeals Case No.<br>20A-CR-757<br><br>Appeal from the Tippecanoe<br>Superior Court<br><br>The Honorable Kristen E. McVey,<br>Judge<br><br>Trial Court Cause No.<br>79D05-1911-F6-1219 |

**Friedlander, Senior Judge.**

[1] Douglas Edward Akridge, Jr., appeals the one and one-half year sentence the trial court imposed after he pleaded guilty to failure to return to lawful

detention, a Level 6 felony.[1]  He asks the Court to review and revise his sentence.  We affirm because Akridge's sentence is not inappropriate in light of the nature of the offense and his character.

[2]  In August 2019, Akridge was serving a sentence on community corrections in Case Number 79D05-1712-F6-1344 (F6-1344) after pleading guilty to a prior charge of failure to return to lawful detention, a Level 6 felony, with a habitual offender sentencing enhancement.  Community corrections officers tracked Akridge by a GPS unit attached to his leg.  In addition, they had reviewed and approved his daily schedule, which included attending substance abuse treatment and going to work at a fast-food restaurant.

[3]  The officers filed conduct violation reports in Akridge's case on August 14, 17, and 27, 2019, respectively.  They claimed he had committed violations including attempted tampering with his GPS device, failing a drug screen, and failing to pay community corrections fees.

[4]  On the morning of August 30, 2019, Akridge left the work release facility to attend substance abuse treatment, to be followed by a shift at work.  He did not return to the facility at the specified time later in the day, and his GPS unit stopped reporting data.  On August 31, investigating officers learned that Akridge had reported to his treatment provider after a six-hour delay, but he had never reported to work.  The officers checked area hospitals and the county

_____

[1] Ind. Code § 35-44.1-3-4 (2014).

jail, but they did not locate Akridge on August 31. They subsequently arrested him at a co-worker's home.

[5] The State requested revocation of Akridge's community corrections placement in F6-1344. In addition, on November 12, 2019, the State opened Case Number 79D05-1911-F6-1219 (F6-1219), charging Akridge with a new count of failure to return to lawful detention, a Level 6 felony.

[6] Akridge later pleaded guilty as charged in F6-1219 without a plea agreement and admitted to violating the terms of his community corrections placement in F6-1344. The trial court sentenced him to one and one-half years in F6-1219, with six months of the sentence to be served on community corrections. The court further ordered Akridge to serve the remaining 377 days of his sentence in F6-1344 in the Department of Correction or the county jail. This appeal followed.

[7] Akridge challenges the executed portion of his sentence in F6-1219, asking the Court to allow him to serve it entirely on work release.[2] Article 7, section 6 of the Indiana Constitution authorizes the Court to review and revise sentences "to the extent provided by rule." This constitutional authority is implemented through Appellate Rule 7(B), which provides that Indiana's appellate courts may revise a sentence otherwise authorized by statute "if, after due consideration of the trial court's decision, the Court finds that the sentence is

---

[2] Akridge is not challenging his sentence in F6-1344.

inappropriate in light of the nature of the offense and the character of the offender."

[8] The principle role of appellate review under Appellate Rule 7(B) is to attempt to leaven the outliers. *Hunter v. State*, 60 N.E.3d 284 (Ind. Ct. App. 2016), *trans. denied*. "[W]e must and should exercise deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give 'due consideration' to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Stewart v. State*, 866 N.E.2d 858, 866 (Ind. Ct. App. 2007). More specifically, when a defendant claims that the placement of a sentence is inappropriate, it is "quite difficult" for the defendant to prevail because "trial courts know the feasibility of alternative placements in particular counties or communities." *Fonner v. State*, 876 N.E.2d 340, 343 (Ind. Ct. App. 2007). A defendant bears the burden of persuading the appellate court that his or her sentence has met this inappropriateness standard of review. *Childress v. State*, 848 N.E.2d 1073 (Ind. 2006).

[9] To assess whether a sentence is inappropriate, we look first to the statutory range established for the class of the offense. When Akridge committed failure to return to lawful detention, the sentencing range for a Level 6 felony was imprisonment for a fixed term of between six months and two and one-half years, with the advisory sentence being one year. Ind. Code § 35-50-2-7 (2019). The trial court sentenced Riley to an enhanced sentence of one and one-half years, but six months of the sentence is to be served on community corrections.

Next, we look to the nature of the offense. "The nature of the offense is found in the details and circumstances surrounding the offense and the defendant's participation therein." *Morris v. State*, 114 N.E.3d 531, 539 (Ind. Ct. App. 2018), *trans. denied* (2019). Akridge claims his failure to return to the work release facility was the result of a series of medical and financial challenges that caused him to become anxious about returning to the crowded work release facility, resulting in him self-medicating with methamphetamine and hiding out at a co-worker's home.

There is no dispute that Akridge has serious mental health issues, but he did not raise his medical and financial issues with community corrections officers. Instead, he committed a series of rule infractions in August 2019, including a failed drug test and attempted tampering with his GPS monitoring device, before finally absconding on August 30, 2019. Akridge's use of methamphetamine during his period of escape compounds the seriousness of his offense. Although Akridge claims he sought help at emergency rooms prior to August 30, his failure to return to the work release facility after a string of violation reports indicates he was primarily motivated by a fear of losing his community corrections placement.

We now turn to the character of the offender. The character of the offender is found in what we learn of the defendant's life and conduct. *Morris*, 114 N.E.3d at 539. Akridge was thirty-six years old at sentencing. The trial court did not direct the preparation of a presentence investigation report, but the record demonstrates Akridge was serving a sentence for failure to return to lawful

detention, with a habitual offender sentencing enhancement, when he committed the offense in F6-1219. Given Akridge's history of repeated escapes from community corrections, it is reasonable to conclude that a period of incarceration is necessary to emphasize to Akridge the importance of complying with community corrections rules.

[13] In addition, the habitual offender sentencing enhancement was based on prior felony convictions of possession of methamphetamine, possession of a legend drug, and check fraud. Also, during sentencing, Akridge conceded he had been convicted of an unspecified offense in a case in Tippecanoe Superior Court 4 for an act he committed after his August 30 failure to return to community corrections. His numerous prior contacts with the criminal justice system have not induced him to correct his behavior.

[14] Akridge notes that he pleaded guilty without an agreement. While a guilty plea that provides no benefit to a defendant is generally entitled to mitigating weight, such a plea "is not necessarily a significant mitigating factor" where the evidence of guilt is substantial. *Scott v. State*, 840 N.E.2d 376, 383 (Ind. Ct. App. 2006) (determining Scott's guilty plea was entitled to less weight because an eyewitness could identify Scott as the robber), *trans. denied*. In this case, there is substantial evidence of Akridge's failure to return to lawful detention. He has failed to demonstrate that his one-year period of incarceration is an outlier in need of correction.

[15] For the reasons stated above, we affirm the judgment of the trial court.

[16]    Judgment affirmed.

May, J., and Mathias, J., concur.